**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**LEWIS MICHAEL GEORGE,**

     **Plaintiff,**

     **v.**                       **CASE NO.  24-3123-JWL**

**VANESSA PAYNE-DELANO,**
**et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER**

     Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF").  The Court granted Plaintiff leave to proceed in forma pauperis.  The Court finds that the proper processing of Plaintiff's Eighth Amendment claims cannot be achieved without additional information from appropriate KDOC officials.  The Court also directs Plaintiff to show good cause why his claims in Count V should not be dismissed.

**I.  Nature of the Matter before the Court**

     Plaintiff's claims are based on an incident occurring on July 7, 2023, at EDCF.  Plaintiff alleges that for approximately two weeks prior, he had been to sick call for pain in his upper right quadrant of his abdomen.  (Doc. 8–1, at 9.)  Plaintiff alleges that two of the four sick calls "were not seen or triaged," resulting in Plaintiff submitting sick calls and begging to be seen and treated.  *Id.*  On July 7, 2023, Plaintiff received ice at the AM Ice Pass around 7:30 am, and when he sat his cooler down, he felt an extremely sharp increase in pain in the same area. *Id.*  Plaintiff alleges that the pain was so bad that he began vomiting.  *Id.*  Plaintiff and his cellmate notified CS1 Firman that Plaintiff was in extreme distress.  *Id.*

1

Plaintiff claims that around 8:30 to 9:00 am, Nurse Payne-Delano came to Plaintiff's cell door and spoke with him about what symptoms he was experiencing. *Id*. Plaintiff alleges that Nurse Payne-Delano did not perform a physical examination and told Plaintiff she "would make some calls." *Id*. When Nurse Payne-Delano returned twenty minutes later, she told Plaintiff that the Nurse Practitioner ("NP") for segregation was off for three days, so she had to call NP Johnston, who is the NP for general population. *Id*. Nurse Payne-Delano relayed to Plaintiff that NP Johnson told her that Johnson was not going to interfere with a segregation case, but that based on Plaintiff's medical history of kidney stones, she recommended that Nurse Payne-Delano give Plaintiff Tylenol and let him pass the kidney stones. *Id*. Plaintiff alleges that Nurse Payne-Delano did not examine Plaintiff or take him to a sick call room to perform the "mandatory abdominal protocol for abdominal pain." *Id*.

Plaintiff alleges that the vomiting and excruciating pain continued until 11:30 am to 12:00 pm, when he placed a call to his mother asking for her assistance. *Id*. at 9–10. Plaintiff's mother began calling the facility, and at around 1:30 to 2:00 pm, CS1 Firman came to Plaintiff's door and informed him the UTM Buchanan contacted medical and they said they were sending a nurse with some pain medication. *Id*. at 10. At the 2:30–3:00 pm count, Plaintiff asked CS1 Firman for help and was told that if he interrupted count again, he would be written up for interfering with count. *Id*. At around 3:15pm, CS1 Firman and CO1 Luna took Plaintiff to the segregation clinic where the nurse administered a shot of Toradol and Phenergan. *Id*. The nurse listened to Plaintiff's abdomen with a stethoscope, pressed on the area, and told Plaintiff that if it was a kidney stone it would have to pass on its own. *Id*.

Plaintiff returned to his cell and laid down. *Id*. Upon awakening at around 5:30 to 6:00 pm, he immediately began vomiting from the excruciating pain. *Id*. Plaintiff began shivering

violently and his teeth were chattering uncontrollably. *Id*. Shortly thereafter, the pain increased exponentially along with the nausea. *Id*. Plaintiff alleges that he could not stand or walk properly, and at around 7:00 pm, he was experiencing severe nausea and when he stood up, and he experienced a "super strong burst of pain which caused [him] to yell loudly and pass out." *Id*. When he regained consciousness, he observed his cellmate violently kicking the door and screaming for help. *Id*. Plaintiff began to notice a severe burning sensation in his lower right abdominal area. *Id*. CS1 Reichart[1] arrived at Plaintiff's cell and asked if he was okay. *Id*. at 11. After hearing from Plaintiff and his cell mate and taking one look at Plaintiff, CS1 Reichart left and immediately began calling "higher up his chain of command & medical staff to attempt to get [Plaintiff] the desperately needed help." *Id*.

Plaintiff alleges that at around 9:00 pm, CS1 Reichart came and told Plaintiff that the Special Security Team ("SST") was being called to transport Plaintiff to the hospital for help. Plaintiff was then taken to the segregation clinic, given another shot of Toradol and Phenergan, and allowed to sit in a plastic chair in the strip-out room restrained behind his back. *Id*. Plaintiff alleges that after receiving the shots, a detailed abdominal exam checklist was still not performed. *Id*. At around 9:45 to 10:00 pm, Plaintiff was escorted to the prison infirmary to await transport. *Id*. Plaintiff alleges that he was in route to the hospital at around 11:00 to 11:30 pm.

The doctor at the hospital examined Plaintiff and determined that he had appendicitis, and needed emergency surgery. *Id*. The surgery was performed the next morning at 7:00 am, and the doctor told Plaintiff that he was glad they did the surgery when they did because Plaintiff's ruptured appendix would have killed Plaintiff if he had arrived at the hospital two hours later.

---

[1] CS1 Reichart is not named as a defendant.

*Id*. at 11–12.  The doctor showed Plaintiff how to perform a rebound pain test to check for active appendicitis and told Plaintiff that this is something the nurses should have "absolutely" been taught in school and "there is no medical reason it should not have been administered by the prison medical staff."  *Id*. at 12.

Plaintiff alleges that it was deliberate indifference to wait approximately six hours to administer pain medication and to do so without completing an abdominal pain checklist.  *Id*. Plaintiff alleges that Defendants failed to escalate the situation to a medical emergency.  *Id*. Plaintiff alleges that causing Plaintiff to suffer for 16 hours in excruciating pain without effective pain medication or medical treatment shows deliberate indifference by both Kansas Department of Corrections ("KDOC") staff and Centurion medical staff.  *Id*.  at 13.  Plaintiff alleges that the failure to escalate the situation until after his skin and eyes became yellow and discolored was deliberate indifference.  *Id*.  Plaintiff alleges that the discoloration was a sign that he was in extreme distress, and he was in fact suffering the effects of septicemia.  *Id*.  Plaintiff alleges that he suffers from anxiety and PTSD every time he needs to submit a sick call for his ongoing abdominal pain.  *Id*. at 14.

Plaintiff alleges that Dr. Harrod was informed of the situation, but failed to give an order to his subordinates to perform he abdominal tests and exams required to diagnose the cause of pain.  *Id*. at 17–18, 21.  Plaintiff alleges that Warden Tommy Williams failed to render aid on July 7, 2023, because he is "directly responsible for the training & actions of the Officers and Administrators of his facility" and he failed to ensure that staff were properly trained.  *Id*. at 18, 21–22.  Plaintiff alleges that Defendant Luna failed to escalate the situation during his 12-hour shift, after it was brought to his attention and in light of Plaintiff's visible symptoms.  *Id*. at 20. Plaintiff alleges that Defendant Buchanan blatantly ignored Plaintiff's pleas and requests and

refused to declare an emergency even after observing Plaintiff's screams from the excruciating pain. *Id*.

Plaintiff's claims in Counts I through IV allege that Defendants were deliberately indifferent by failing to render aid, by failing to provide access to medical personnel, by failing to escalate the situation to a medical emergency, and by failing to provide adequate medical care. In Count V, Plaintiff claims that the Defendants conspired to deprive Plaintiff of his constitutional rights, and interfered with his attempts to pursue administrative remedies. Plaintiff claims that he has no access to the law library and has to submit a Form 9 to request case law and statutes. Plaintiff alleges that this is a violation of his due process rights.

Plaintiff names as defendants:  Vanessa Payne-Delano, RN for Centurion at EDCF; Katherine K. Firman, CS1 at EDCF; Anthony R. Luna, CO1 at EDCF; Janelle L. Buchanan, UTM at EDCF; C. Gordon Harrod, M.D. for Centurion at EDCF; Breanna Johnston, N.P. for Centurion at EDCF; and Tommy Williams, EDCF Warden.  Plaintiff seeks declaratory relief, injunctive relief, and compensatory and punitive damages.  (Doc. 8, at 5; Doc. 8–1, at 7.)  His request for injunctive relief seeks an order compelling Defendants to provide important training on the dangers and signs of appendicitis, and training on responding to calls for help and pleas for aid.  (Doc. 8–1, at 7.)

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28

U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round

out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Medical Claims

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the

presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

"A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he

strongly suspected to exist.'"  *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory."  *Id*. at 1139.  "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."  *Id*. (citations omitted).  Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability."  *Id*.  "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances."  *Id*.  (citations omitted).

The Court finds that the proper processing of Plaintiff's Eighth Amendment claims cannot be achieved without additional information from appropriate KDOC officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate KDOC officials to prepare and file a *Martinez* Report.  Once the Report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

### 2.  Count V

Plaintiff alleges in Count V that Defendants conspired to deprive Plaintiff of his constitutional rights, and interfered with his attempts to pursue administrative remedies.  Plaintiff also claims that he has no access to the law library and has to submit a Form 9 to request case law and statutes.  Plaintiff alleges that this is a violation of his due process rights.

Plaintiff's bald allegation of a conspiracy is insufficient to state a claim. Plaintiff fails to assert factual allegations in support of these claims. To state a claim for conspiracy, Plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone. Such conclusory allegations fail to state a plausible claim for relief.

Plaintiff's claims in Count V are also based on Plaintiff's dissatisfaction with the grievance process. Plaintiff acknowledges that a grievance procedure is in place and that he used it. *See* Doc. 8–3 through 8–10. Plaintiff's claims relate to his dissatisfaction with responses to his grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's claims

regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

Plaintiff's claim in Count V regarding access to the law library is also subject to dismissal.  It is well-established that a prison inmate has a constitutional right of access to the courts.  However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

Any claim regarding access to a law library would require an actual injury.  The right to access the courts does not guarantee inmates the right to a law library or to legal assistance, but merely to "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 350–51 (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)).  The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research." *Id*. at 354, 360.  Plaintiff should show good cause why his claims in Count V should not be dismissed for failure to state a claim.

## IV.  Motions

### 1.  Motion for Appointment of Counsel

Plaintiff has filed a Motion for Appointment of Counsel, setting forth his attempts to obtain counsel.  (Doc. 4, at 2–3.)  He argues that he should be appointed counsel due to his

current incarceration, his indigent status, and his limited access to the law library and legal resources. *Id*. at 3–4.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

### 2. Motion for Consideration of Evidence

Plaintiff has filed a motion requesting a writ of mandamus, arguing that KDOC policies hinder access to the court. (Doc. 5, at 1.) Plaintiff alleges that he has had an ongoing problem

getting KDOC staff and administration to turn over electronic communication "evidence" in the form of hard copies "to be attached as exhibits in support of [Plaintiff's] continued efforts to exhaust [his] administrative remedies." *Id.* Plaintiff is seeking a subpoena to obtain evidence regarding his exhaustion of administrative remedies, claiming that this would "provide the Court with the evidence necessary to resolve the issues that may be raised about failure to exhaust administrative remedies." *Id.* at 2. Plaintiff alleges that there is an informal policy of trying to dissuade efforts to exhaust and staff ignore requests or provide unacceptable answers to relevant issues. *Id.* at 4.

The Court has found that Plaintiff's claims in Count V regarding the grievance process are subject to dismissal. An issue regarding exhaustion of administrative remedies for his claims in this case has not been raised. In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

If exhaustion becomes an issue in this case, Plaintiff can seek discovery through the pretrial process. Plaintiff's claims have not survived screening, and any request for discovery at this time is premature. Plaintiff's motion is denied without prejudice.

### 3. Objection to Initial Partial Filing Fee

Plaintiff has filed an objection to the initial partial filing fee assessed by the Court. (Doc. 11.) Plaintiff sets forth his financial situation and the difficulty in obtaining funds from

family.  The Court will treat the objection as a motion to waive the initial partial filing fee and will grant the motion.  The initial partial filing fee in the amount of $13.50 is waived.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff is granted until **September 16, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims in Count V should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 4) and Motion for Consideration of Evidence (Doc. 5) are **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's request to waive the initial partial filing fee (Doc. 11) is **granted.**  The initial partial filing fee in the amount of $13.50 is **waived.**

**IT IS FURTHER ORDERED** that:

(1)      The Court will enter a separate service order for the KDOC defendants.  The Clerk is directed to request waiver of service for Centurion employees in the manner requested by counsel for Centurion and through Centurion's registered agent.

(2)      The KDOC shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed.  Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order setting an answer deadline.  Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3)      KDOC officials are directed to undertake a review of the subject matter of the Complaint:

        a.      To ascertain the facts and circumstances;

        b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5)     Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(6)     Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7)     No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to counsel for the KDOC, and to the

Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated August 14, 2024, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**