IN THE 10TH CIRCUT COURT DISTRICT OF KANSAS

Lewis Michael George #81547
          Plaintiff
          V.

Vanessa Payne-Delano, etal
          Defendants

) 
)
)
) CASE NO. 24-3123 JWL
)
)
) Answer to Memoronelum & Order

### Answer to Courts Memoronelum & Order

Comes now, Plaintiff Lewis Michael George #81547 pro se, respecthully submits this answer to the Memoronelum & Order issued by this Court to show cause why his complaint should not be dismissed.

As evvelence in support of this answer & his complaint the Plaintiff presents the following.

Pursuant to F.R.C.P. 26(b), the Plaintiff has sought from the Court & to be included in the report prepared pursuant to Martinez v. Aaron that the video evvdence from A1 cellhouse E.D.C.F. be produced. Review of this evvdence will show that the Centurion employees' actions in question are not those they claimed to have taken. That in fact, Defenelant Vanessa Payne Delano only came to the Plaintiffs cell early in the morning between

-1-

8:30 AM - 10:00AM. It will also show that despite her claim to have administered shots of Toridol & Phenergan at or around 10:59 (Exhibit 6 paragraphs 9-10). These statements made by Defendant Payne-Delano are simply not true & upon review of the video evidence will be shown as such.

In fact the first administration of Toridol & Phenergan did not occure until well into the afternoon (approx 3:45-4:30), & was supported by the statement/affidavit given by CSI Firman, (Defendant), (Exhibit 13 para 6). Upon review of the video evidence around the approx times the Court will see that not only is this true, but also that Defendant Payne-Delano, infact wasn't the person who administered the medication at all!

Pursuant to FRCP.26 (e) this video evidence should be produced by K.D.O.C. in order to "fact check" the statement given by Defendant Payne-Delano under penalty of purgery. To do so will show that the statements given by Defendant Payne-Delano were infact given to cover up the negligent, deliberate rule, indifferent conduct she provided. Review of

- 2 -

the video footage from 7-7-23 ( 7:00AM to 12:00PM)
will show that I was, in fact, not even pulled
from my cell until 3:45 to 4:30 PM for the first
time. This was to receive shots from another nurse
(Trystn C. Dufoe?)

Defendant Payne-Delano also entered vital
signs into document M2 (Exibit 28 pg 108-111)
This document is described as a Nurse Visit with
Defendant Payne-Delano. It contains vital signs
that were never taken! Review of the video will
show this. Being that this document was part of
my permanent medical file, this makes it a legal/
official document. The Defendants statement that
she did these things when in fact she didn't.
Both of these things ammount to purgery on
their own. And collectively with the evidence
yet to be discussed will show intentional actions
taken to cover up the deficient care & negiligent
behavior shown by Defendant Delano that day.

In further support of my argument that
Neither Defendant Harrod or Defendant Payne-
Delano provided even the barest modicum of

care I refer to Defendant Delano's Affidavit once more, (Exhibit 6, para 9) "At or around 10:51 Am. Mr. George was brought into the sick call room for an assessment.". Video will show this not to be true..

When this video shows that not only was I not pulled out at 10:51 AM or any other time until after the 3:30 PM Count. That will show that not only was the 10:51 AM appointment/encounter not real, but Defendant Delano never returned to my cell. There by making her statement in (Exhibit 6 para 11), "It is my personal medical opinion that Mr George's condition was frequently addressed, diligently monitored, & treatment was promptly provided during this period.", a complete falshhood.

A single encounter through a door. In which NO VITALS were taken, nor any physical exam rendered can in no way be conidered frequent, diligent, or prompt.

Per Marium-Websters Dictionary the definition of Frequent: inport - acting or Returning regularly

-4-

or often. 1.(b) says: Happening at short intervals; often repeated or occurring.

Diligent: Characterized by steady, earnest, & energetic effort.

By definition Defendants Payne-Delano's actions could not be characterized by either frequent, or diligent. Due to the Defendants only encounter with me being through the door. there is no way she could have relayed ~~accurate~~ the accurate information necessary in order to properly inform which ever on call physician was contacted too render a medical diagnosis that day. Thereby providing even more proof that I was in fact not provided with the an informed medical oppinion, I was in fact allowed to suffer for over 8 hours before I even received any ~~pain med~~ meaningful pain medication. That her actions were in fact deliberately indifferent to my condition!

In fact, any deficiencies in the care provided & conduct of Defendant Payne-Delano directly translate to a deficiency in the care provided by the on call physician, (Dr Harrod or Dr Stopp), due to their not being available to personally examin me. They instead were forced to rely on the false

statements & fake observations given them by Defendant Payne-Delano. There by once again denying me access to an informed medical decision, allowing me to suffer in excruciating pain, tantamount to Cruel & Unusual Punnishment, through the deliberate indifference of them & their actors. These all ammount to the multiple constitutional rights violations set out in Plaintiff's original complaint.

For further proof in support of these facts I refer to the statements given by the following individuals.

In the statement given in COI Curtis Hutsell's Affidavit Provided in the (Exhibit # 29 para 2): inpert: "I know inmate Lewis George & was working in the control room which included responsibility for his living unit the day of July 7th, 2023. I worked a [12] hour shift from 6:00 AM, [until 6 PM]." Further in (Exhibit 29, para 3), "Because I was assigned to the control room that day, I was not on the floor [&] available to speak directly to inmates. I did have an intercom through which inmate could contact me. Mr. George (Plaintiff), did contact me & asked me to have a floor officer come to his cell. As I recall, he wanted the officer to contact the healthcare

provider to come to his cell. I did as he asked".

This request was made to Mr. Hutsell at or around 11:30 AM to 12:00 PM. It was necessary to make this request due to all the requests of myself, my cellmate, & other inmates, to Officers & Unit Teams, & healthcare Staff being ignored & unheeded.

This also proves that the condition described in Plaintiff's initial complaint (pgs 9-10, & pgs 15-28) coupled with the sick call receipt filed with the Plaintiff's initial complaint (pg 46) & the sick call receipts contained in (Exhibit 28, labeled M.2) from 6-16/17-23, that the issue was NOT sudden in arrising. It had in fact been on going since 6-16/17-23. The complaint area says in part: "... My only concern is that abdominal area has been having weird feelings & pain.".

Since after the events of 7-7-23, the severe, intense, & excruciating pain described in the Plaintiff's initial complaint & the 2 sick call receipts on record, has since been resolved by the appendectomy proformed on 7-8-23. These things serve to prove the continued existance of a condition that existed for 22 days at minimum!

Had defendant Payne-Delano actually reviewed the medical file throughly, (which would be a necessary part

of providing an informed medical decision), she would have seen that the complaints of pain in the abdomen were persistant. Thereby necessitating at the bare minimum a physical examination! She instead chose to enter vital signs she didn't take, relay information to whoever did make the diagnosis that was grossly inaccurate. Omitting the fact that Plaintiff told her in the course of conversation at the door that he could in fact urinate freely. This important fact would be contrary to a diagnosis of a kidney stone. Which is hallmarked by the inability to urinate.

　　At this point it's necessary to point out that Dr. Harrod's assesment of Plaintiff was not in person as evidenced in Exhibit 28 or Document M2, pgs 112-13 line 8 of pg113 states that the exam was "Constitutional", under details it says "Pt is not seen by me."... This statment alone shows not only Dr. Harrod's reliance on the accuracy of the information relayed to him by Defendant Payne-Delano. It also shows that the condition was in fact ongoing.

　　Had I (Plaintiff), in fact, been suffering from a kidney stone from 6-17-23 until 7-7-23, that would mean I would have suffered for 22 days. In my uninformed medical opinion, suffering in pain without the ability

to urinate would be agregious at best, not to mention a medical imposibility.

Per Defendant Harrel's statement (Exhibit 4, para 17) in part; "... Plantiffs' medical condition was fraceeenty oddressed, diligently monetered, + treatment was promptly provided.". In Exhibit M2, pg 113, line 8 it says under details "Pt is not seen by me.". Also of note in Exhibit 28, M2, pg 115, under General Comments: "Recieved report from Nurse Payne-Delano RN that he had complained of Rt lower abdominal pain earlier today + thought it was a Kidney stone, as patient states. hx (history) of Kidney stone EtN felt just like this. Resident was medicated at 10:20 AM. this morning with Toradol ... + Phenergan, + he had been fine until recieved call at 18:30 regarding resident is again hurting + feeling nauscious + is wanting additional pain control. Called + spoke with Dr. Stopp on call MD + he gave orderes to remedicate with Toridol + Phenergan.".

In this document Nurse Payne-Delano reported that "I was reporting "Rt lower abdominal pain earlier today"... This was the pain I had actually reported to her, (Defendant Delano), in the encounter at the cell door. This is in drastic contrast to those made by Dr. Harrel

in his affidavit, (Exhibit 4, para 8-16); which says in part ... "[Dr Harrod] evaluated [plaintiff], pt complained of pain localized to the right upper quadrant of his abdomen. Appendacitize is associated with the pain in the lower right quadrant of the abdomen, which pain pt, did not develop until the evening of July 7, 2023, at which time pt was transported to the emergency room for further evaluation & treatment.".

Either Defendant Payne-Delano relayed inaccurate & false information to Defendant Harrod which resulted in his "uninformed medical diagnosis". Or Defendant Payne-Delano did like her statement in Exhibit 6, para 9, "At or around 10:51 AM, Mr. George was brought into the sick-call room for an assessment. Around this time I recieved a call from Dr. Harrod inquiring about the status of Mr. George. I told him that Mr. George was experiencing pain associated with an apparent kidney stone & was requesting morphine & valium for his pain." ... Being as the 10:51AM assessment will be shown to never have happened upon review of the video evidence. This means that for reasons yet to be explained by her, she failed to relay any of the information to the Defendant

-10-

Harrod which was necessary in order to make an informed diagnosis. She did find it necessary to record the accurate information, later, into Plaintiffs medical file, only after it was determined by the on call physicien (Dr. Stopp?), that it was necessary for Plaintiff to "be taken to E.R. for evaluation" since we [can't] preform an ultrasound at this facility + we can't [rule out] appendacitice or other abdominal complications"... (Exhibit 28, M2 pg 115, General Comments). This entry was made by Brend Ortiz at 1:51AM on 7-8-23. Because it exhists it's proof that she knew I had been (Defendant Delano) reporting the location of said pain as being in the "Rt lower quadrent." It was just more convient for her + the floor Officers (Defendants Firman + Luna), to not have to pull me out to the sick call room. Proof of all this will be found by reveiw of video footage from 7-7-23, A1 cellhouse, EDCF from 7:00AM to 11:59 AM.

All the things discussed previously in this answer when proven true by the camera footage will show that the actions taken by Defendant Delano were intentional. There would be no other reason to enter vital signs into, + claim to have administered shots

of Toridol + Phenergan, + state she was the person
whom had Plantiff brought to the sick call room. It's
only because of the necessity for her to insulate herself
from a showing of deliberate indifferece that would
justify lying on an official/legal document, +
making claims of administering medications + making
assessments that never happened. These all prove that
her actions during + after the events in question were
intentional. Martin v. Snyder, 2002 U.S. Dist LEXIS5402
Says in part under Head note 9: ..." Under the subjective
component," ... "It requires, at minimum, that the prison
officials have realized there was imminent danger + have
refused -- conscrously refused, knowingly refused -- to do
anything about it." Citing Campbell v. Greer, 831 F2d 700,
702 (7th Cir. 1987).

       ~~Because~~ The K.DOC. has a duty to provide reasonable
+ prudent care for those inmates in its custody. There
was no reason that Defendant Payne-Delono would
have had to falisify medical records, (committing
medical malpractice in the process), had she actually
provided said reasonable + prudent care.
   Perry v. Meade, 728 F.App'x 180, 182 (4th Cir. 2018)
This situation shares similarities with the ~~occurences in question~~  occurences in question
~~case~~ insofar as it shares the similar circumstances. In

Perry the Plaintiff repeatedly informed prison medical professionals that their [course of] treatment plan was ineffective, his bleeding & pain had worsened, & that the medical personell prescribed his courses of treatment "without conducting medical examinations." Subsequently, the prisoner's condition worsened to the point he had to be hospitalized for 5 days"...

Due to the existence of 2 sick calls evidencing my complaints of abdominal pain dating back to at least 6-21-23 (Pg 46 of Plaintiff's original filing). (Not to mention the 2 sick calls that were filed & for which I was never seen.) These show that the medical file contained evidence that not only had the condition been ongoing for over 3 weeks, but also that the treatment plan was ineffective. Couple that with the lack of an examination on the day in question, the falsification of records. These things closely mirror the circumstances seen in Perry.

In the Courts Memorandum & Order (pg 4, para 1) says in part, "The Tenth Circuit recently clarified that "It is possible to have some medical care & still state a claim under the gate keeper theory." "The inquiry under [the] gatekeeper theory is not whether the prison official provided <u>Some</u> care but rather they fulfilled

their sole obaligation to refer or otherwise afford access to medical personel capable of evaluating a patients treatment needs when such an obligation arises."

Defendant Delano did in fact provide some care if talking to me through a door & providing some Tylenol can be considered "care". But by failing to provide the necessery physical exams, relay accurately the symptoms expressed to the on call physician, or administer the prescribed medication. She could have, in no way, fulfilled her obligation under the gatekeeper theory.

In M2 pg 115 under General Comments it says in part; "Reviewed report from Nurse Payne-Delano RN that he had complained of Rt lower abdominal pain earlier today". ... Being that it can only be reasoned that this document was created by the on call physician. This shows not just the awarness of Defendant Payne-Delano but also the on call physician, (Defendant Harrod), that right lower abdominal pain existed. Defendant Harrod statement in (Exhibit 4, para 8-16) says in part, " "Appendicitis is associated with pain in the lower right quadrant of the abdomen". ... This shows that both the Defendants (Payne-Delano & Harrod)

-14-

were aware of the risk & facts. Also that both Defendents make the claim of "Frequently addressing & diligently monitering, & promptly providing" of care. Shows that the inference was drawn. For which the necessity of making the claims that these things were provided becomes evident. In Dr Harrods Affidavit he makes the statement that he ordered "frequent re evaluation". This would indicate that Defendent Harrod had at least a suspision that there was some risk present. This shows a disregard by both defendents of an excessive risk to my health. Failure to provide the prescribed medication ordered for over 8 hours. Not Frequently addressing, diligently monitering or promptly providing medical care shows deliberate indifference on their parts.

The Plaintiff Further supported his claims of deliberate indifference by providing with his initial filing the Affidavits of Mark Hopkins (pg 42-43), Nicholas Sheldon (pg 44), & Joshua Matchett (pg 45). Both Mark Hopkins & Nicholas Sheldon were assigned to Cell 214 A1 cell house, E.D.C.F. Their cell shared a common vent & was within easy earshot when standing near the door. Their observations were made directly.

They both accurately describe the events of that day. Detailing my crys of pain, requests for aid + most importantly the failure of Officers, Unit Teams, + Medical personelle to do anything to alleviate the ongoing excrutiating pain + life threatening condition I was experiencing.

The Falsification of medical documents alone is fraud which is a criminal offense! It's in violation of KDOC IMPP 00-001, a violating of the HIPPA act among other things. It also makes the reliance of a diagnosing physician on these documents in making an "informed medical diagnosis" an impossibility. Failing to render an "informed medical diagnosis" IS a constitutional violation. Which is a dolorable claim under §1983. Failing to render an "informed medical diagnosis" would also indicate deliberate indifference when the condition underlying the circumstances is proven to be sufficiently serious. "A delay in treatment that results in substantial harm constitutes an 8th Amendment violation, + the substantial harm requirement is satisfied by the [existence], evidence of "Conciderable pain." Citing Gray v. Geo Grp., Inc., 727 Fed. Appx. 940

It's no secret that suffering from an appendicitie is painful! Suffering in even moderate pain for

an extended period of time has been shown to satisfy the standards of an 8th Amendment Claim.

Being as I suffered from 6-10-23 to 7-7-23 in moderate pain (3-6 out of 10), & for over 16 hours in excrutiating pain (10 out of 10), the fact that prison officials were aware of the existence of this pain, & the fact that ANY meaningful pain medication, regardless of how ineffective, for more than 8 hours (7:30 AM to 3:45-420 PM) shows deliberate indifference by itself. Not to mention the ignoring of pleas for help & cries of pain.

From the outset of the encounter Defendant Payne Delano's attitude was one of annoyance & contempt. Review of the evidence provided pursuant to Martinez will show her intentional deception about the administration of medications & examinations. points to a finding of deliberate indifference.

These things rise above the level of mere conclusory accusations because they are supported by evidence supplied by the Defendant's employers. They can & will be further supported by review of the requested video footage.

Review of the following IMPP's & the indicated sub-sections will show the Defendant's violated multiple

- 17 -

IMPP's by their actions and/or failure to act that day.

IMPP's : 02-118 was violated by the falsification of records.

10-121 D, I, B, (1) Says nurses shall by contract uphold the Nursing Clinical Guidelines consistant w/ KS Nurse Practice Act ( KSA. 65-1113(d)

10-121 D IV, B, (2) This policy places responsiblity for final clinical judgment on a physician/ medical director.

03-104 D I, D(6)(a)(1),(b) Requires CPR/First aid training. Which could supply the minimum medical knowlege to know of the risks of apendacitice, its symptoms + pain tenderness tests.

10-121 D IV, A (2) Sets out the responsibalities of HSA to have procedures in place for prescribing + following clinical orders, written or verbal.

10-121 D, VII : This whole section was violated by the Defendents

10-121 D VII ; A : Defendent Delores conduct obviously violated this.

10-101 D I A 8 ; Part A reads "The System Management Team shall ensure, as funding permits, that the following programs + services are established + mandated, are evidence-based, + are implemented with fidelity." Subsection 8 says Health Services

16-107 D I A : Health care services provided to residents shall include, but are not limited to outpatient care,

hospitalization, & or referal to community resourses
when indicated. The following catagories of health
care services shall be available to all residents...
5. says First Aid, 6. Emergency Care Services 7. Infirmary
Care, 8. Sick call & physicians Clinic, 13. Special Needs
Services, 15. Diagnostic Health Care Services.
Section III A, 1. says "Such procedures will address
the basic rights of the residents to healthcare services,
a. Right of Access to care, b. Right to recieve care that
is ordered. C. Right to professional medical/behavioral
health/dental judgement
Section IV A, 1. The daily receipt, review, triage &
investigation by cqualified health care professionals of
residents health requests or staff referals regardless
disciplinary status or assigned housing. All residents shall
have the daily oppertunity to request health care assistance.
2. A face to face encounter for a health care request
conducted by a cqualified health care professional..."
3. Evaluation in a clinical setting as indicated. (Note:
Contained in the definitions section of this IMPP is a
definition for clinical setting As as follows:
Clinical setting: An examination or treatment room

 -19-

appropriately supplied & equipped to address the patients healthcare needs.)

4. Documentation of all aspects of the healthcare request process from review & prioritization to subsequent encounter.

5. The frequency & duration of response to health services requests must be sufficient to meet the health needs of the population

16-107 D IV B 3: "Daily sick call times are site specific based upon operational schedules of the facility but will not typically occur ~~except~~ in an emergency during the normal sleep hours of the residents. (Between 11:00 PM & 3:30 AM)."

16-107 D IV B 5: "Confidentiality is to be maintained in the sick call process. Access to written health requests that describe specific health care issues is limited only to healthcare staff or a health liaison as applicable.

16-107 D IV C 5 (a): "The initial response to medical sick call requests is often assessment & treatment by qualified nursing staff using the contracted vendors' physician-approved nursing assessment guidelines, however higher-level evaluation & treatment may be required & guidelines include:"

16-107 D IV C 5 (a): "Patients requiring care beyond the scope of the nursing guidelines are evaluated by nursing staff & then referred to a physician, advanced practice registered nurse or physician assistant based upon the urgency of the clinical problem."

16-107 D IV C 5 (c): "Patients seen by nursing more than twice for the same complaint within a 30-day period are to be referred to the physician, nurse practitioner or physician assistant."

16-107 D IV B 4: "The health status of residents in restrictive housing shall be closely monitored by licensed or certified health care personnel through daily rounds to assess the resident's general medical & behavioral health status to ensure residents maintain their medical & behavioral health while physically & socially isolated from the remainder of the population."

16-107 D IV B 5: "Health staff shall promptly identify & inform security of residents who are physically or psychologically deteriorating & or exhibit other signs or symptoms of failing health."

16-107 D IV B 7: "Depression & injury are risks during restrictive housing & therefore evaluation by the healthcare staff require

—21—

written & verbal, for medical care, sick call, etc, &
referrals to the health care staff.

    2. Procedures required to implement the
sick call/clinic policy, to include, but not limited to:

    a. Facility schedules for sick call & clinic.

    b. Residents procedures for requesting access to
sick call or clinic visits; &

    c. Staff referral of residents to sick call/clinic.

16-108 D I B: "All medical, dental, & behavioral health
emergencies shall be triaged immediately by healthcare
staff members on-site, & any necessary treatment
<u>will be</u> provided."

16-108 D I C: "In the event that security or other
facility staff contact healthcare staff concerning a
patient with an acute or unexpected health condition, a
face to face encounter is to be conducted by the healthcare
staff either at the patients location or in the health services
unit depending on the circumstances & information provided."

16-108 D II A: This whole section was violated by Defendants.


<u>Conclusion</u>

In Plaintiffs' initial complaint (pg's 9 - 11) titled

"Supporting Facts" the events of 7-7-23 are outlined in detail. Review of these supporting Facts, the previously referred to documents in the Medical Records File labled "M2", will show that the recesitation of the facts, times (plus or minus 30 to 60 min, excuse the minor inaccuracies due to the delirium from the excruciating pain), + review of the camera Footage from A9 cellhouse EDCF cell 216 (from 7:00 AM to 11:59 PM) will show that

A. The Defendants' statements of events are lies in regards to the 10:51 AM assessment + administration of medication.

B. The Plaintiffs condition was in fact <u>NOT</u> frequently reassessed, diligently monitered, nor was care promptly provided.

C. Because the 10:51 AM visit + medication assessment never occured, the Plaintiff was allowed to suffer in excrutiating + conciderable pain for 8 hours or more before recieving the ordered Toridol + Phenergan shots.

D. Over all the Plaintiff had been complaining about pain in his abdomen from 6-15-23 (moderate but persistant) + the prescribed course of treatment was adhered to by Plaintiff. So much so that when the symptoms increased

nowhere else shows the confidentiality breach.

F. The result of Defendant Delano's deficient abhorant actions is that ANY + ALL of Plaintiff's subsequent requests + pleas were denied or ignored by Officers, Unit Teams, + medical personel who were told of the Unconstitutionally rendered diagnosis + assessment. Causing subsequent + further violations of Plaintiff's civil rights to recieve care that is ordered, access medical care, + recieve a PROFESSIONAL [informed] medical judgment by the remaining Defendants.

6. Because of Defendant Delano's relaying of + entry of fabricated symptoms, vitals, + other information the perriod of suffering of Plaintiff right to a professional health judgment was denied. The fabrication of information in a Medical or legal document is illegal not to mention unconstitutional.

14. Of note is also the fact that these + other Defendants have comitted purgery in the production of their sworn statements by relaying info + facts they know are not true.

Respectfully Submitted

_Lewis Michael George #81547_

Lewis Michael George #81547

<u>1-29-25</u>
Date

-26-