IN THE UNITED STATES DISTRICT COURT DISTRICT OF KANSAS

Lewis Micheal George )
Plaintiff )
v. ) CASE NO 24-3123
Vanessa Payne-Delono, Et Al ) Notice of Intent & Legitimate Concerns
)

Notice of Intent & Legitimate Concerns

Comes now, Lewis Micheal George (Plaintiff, Prose), files Notice of Intent & Legitimate Concerns with this court about the serious issues contained here in.

1.) K.D.O.C. actors, officers, & employees continue to persue Retalitory actions against the Plaintiff. These are manifest in the form of my unjustifiable placement into segregation, pre hearing detention, "pre-hearing detention", for an alleged physical altercation. There was never any disciplinary report issued to myself or the other inmate. The other inmate was returned to the prior living unit within 48 hours, & was subsiquently released on perole within 45 days. While I was ~~forced~~ to remain in segregation for the next 9 months on Hold over pending transfer status. Eventhough I still reside at E.D.C.F. Eventually I was allowed to go to general population where officer

-1-

Unit Teams, & other Administration employees made no secret of my previous Protective Custody status.

2. Because of the K.D.O.C. employees' broadcasting to other inmates my former status on Protective Custody I was assulted & battered in early April of 2025 in E1 cell house dayroom. Inmate Jacquline Bears battered me from behind with some sort of weapon that was never recovered. The battery caused damage to my left orbital bone, the upper part of the left side of my jawbone & multiple facial lacerations, multiple cuts to the inside of my mouth. Loss of vision. 2 days before the incident I was called to the Unit Teams office around 2:30 PM. UTM Hoepner & another Unit team asked me if I was ok, & if I had any problems in GP. When I responded "Not that I'm aware of", "Why do you ask?", "What have you heard?" I was told that they "didn't have specifics, but were told to ask by Administration." I signed a P.C. waiver & was told to return to my cell. No further efforts were taken to protect me from or prevent the assult & battery I suffered.

3. On 5-8-25 SST Mosier & Thomas came

to my cell in C2-241 (E.D.C.F. Protective Custody Unit) & began a cell search. Upon completion of said cell search they then proceeded to remove ALL of my paperwork (Legal & non-legal). When I inquired as to why they were doing so & informed them that what they were doing was against the law due to my legal work containing both finished (unfiled) & unfinished legal works relating to this Civil Action. I was told to take it up with Deputy Warden Clark since he was the person who ordered them to do so.

Upon receipt of my legal work that was returned multiple finished & unfinished documents had been removed from it & not returned. These items are pivital & unequivically rooted in the stratagy I'm using to prove & prosicute this case. They represent hundreds of hours of research & work, & severely hamstring my efforts to prosecute this civil suit. Not to mention the actions chilling effect!

In previous NOTLC filing in this case I have outlined other instances of clearly retalitory behavior that when viewed on its own & coupled with this new information serve to show a clear pattern of retalitory behavior undertaken in response to my having excercised my

1'st Ammendment & 4th Ammendment rights to prosecute this civil suit & hold the myriad of tort aggressors in K.D.O.C. & Centurion's employ responsible for their rampent & consistant, not to mention wide spread actions responsible. These actions served no legitimate peniological intrest.

<u>Supporting Authorities</u>

In support of Plaintiff's notirese he provides the following:
- 42 U.S.C § 1983
- 14 Amendment Due Process Clause
- <u>Sigafus v. Brown, 416 F.2d 105 (7th Cir. 1969)</u>

- Adams v. Carlson, 468 F.2d 619 (7th Cir. 1973)
- The District Court Ordered the immediate return of all legal materials previously confiscated, as the deperuation materials necessary to afford reasonable access to the Courts violated due process.
- Along with the recognition of a prisoners rights of access to the courts has come the realization that a prisoner must have access to legal materials, particularly

-4-

where he is unable to retain counsel & must petition the courts pro se.

• Access to the courts ... is a larger concept. It encompasses all ~~charges~~ brought against him or grievances alleged by him.... <u>Johnson v. Avery</u>... makes it clear that some provision must be made to ensure that prisoners have the assistance necessary to file petitions & complaints <u>which will in fact be fully considered by the courts</u>.

• If a prisoner may sue for damages when his legal materials are irrevocably confiscated, then surely he may <u>seek an injunction mandating the return of materials</u> held intact by prison officials after confiscation.

• <u>Adams v Carlson, 488 F.2d 612</u>

Citations & authority is hardly needed for the proposition that an inmates right of <u>unfettered access to the courts</u> is as fundamental a right as any other he may hold citing

• Ex parte Hull, 312 U.S. 546; 61 S.Ct. 640; 85 L.Ed 1034 (1941)

• Coleman v. Peyton, 362 F.2d 905 (4th Cir 1966)

• Lee v. Tahash, 352 F.2d 970 (8th Cir. 1965)

• Spires v. Bottorff, 317 F.2d 273 (7th Cir 1963)

-5-

• "All other rights of an inmate <u>are illusory</u> without it being <u>entirely dependent</u> for their existance on the whim or caprice of the prison warden"
  • <u>Stiltner v. Bottorff, 302 F.2d 318 (9th Cir 1963)</u>
  • <u>IMPP 12-120A III (C)(1)(a-c)</u>
    • This IMPP sets out the guidelines for possession of legal materials. <u>All</u> of which I was in compliance with.

• "Where rights secured by the Federal Constitution are involved, there can be No Rule Making OR Legislation which would abrogate them." <u>Miranda v. Arizona, 384 U.S. 436</u>
  • "A defendant [aireV or Petitioner] against whom a default judgment has been entered [against them] has a Due Process Right to launch a collateral attack of that judgment in another jurisdiction on the basis that it was rendered in violation of 14th Amendment jurisdictional principals. <u>A statute [or rule/policy], that prohibits the Exercise of that Right would therefore pose a serious danger of unconstitutionality.</u> See <u>United States v. Bigford, 365 F.3d 869 (10th Cir, 2004)</u>

This language speaks directly to the Government & Correctional Warden's & other institutional authorities - primarily

-6-

that the government/prisons cannot make rules that would violate the rights of incarcerated persons."

The only other IMPP which allows for the confiscation of inmate property, (legal or otherwise), is <u>IMPP 12-140D Resident in Altered State Response</u>.

In this IMPP it outlines a series of required actions & observations that must be met in order for this IMPP's standards to be met & the subsequent policy to be invoked & applied. These are including observation of behaviors/physical conditions by 2 or more employees, & "shall be recorded via video camera or state issued cell phone video.". None of these conditions were met to remotely invoke this IMPP to justify these actions per this policy.

### <u>Malicious & Sadistic Actions</u>

- <u>Brown v. Howard</u>, 2004 U.S. Dist. Lexis 14935; <u>2004 W.L.</u>
  - "Summary judgement denied for prison staff;" Qualified immunity was not available for prison: "A reasonable person would have known that such conduct,

-7-

"if proven, would have violated that right."

<u>Purkey v. CCA Detention Center</u>, 339 F.Supp.2d 1145, 1145, 1154-55 (D.Kan. 2004), (harrasment, threats, placement in segregation, scattering + disassembling of papers, denial of visits w/ wife, confiscation of legal materials)

Short of being denied visits, this plaintiff has suffered <u>ALL</u> the things described in <u>Purkey v. CCA Detention Center</u>. These can not only be shown by this + previous filings, but also proven (in some respects) through the documentation (segregation reports, facility logs, + P.C. waivers), which should be part of my skeleton master file maintained by the facility. Lack of one or multiple of these mandatory documents should serve to show even more so the level of not only their guilt, but their willingness to conspire together, to cover up their malicious intent.

<u>Bennett v. Goord</u>, 343 F.3d 133, 138-39 (2d Cir. 2003) "direct evidence of retaliatory motive is not required where circumstancial evidence is sufficiently compelling."

<u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009) "passage of 6 months between lawsuit + beating by officers including one of the defendants supported an inference of causation."

By review of the Plaintiff's skeleton Master File, (specifically) the Administrative Segrigation Report dated 9-17-2024. Under the Facts section of this Seg report it describes a physical altercation + my placement in Segrigation "pending the outcome of a disciplinary report for fighting.". By reviewing KASPER (KDOC's Offender Locating website, or the Skeleton Master File referred to previously, you will see that the Segrigation Placement was made though NO Disciplinary Report was ever issued. Exhibit 1 of the Martinez Report which was issued on December 12, 2024 will show as much, that no D.R. was issued even though I was held in Segrigation on First Pre-Hearing Detention / Holdover pending transfer status for no justifiable reason. The other inmate involved in this so called "altercation" was allowed to return to the living unit within 2 days of the incident + was subsequently released to a M.D.O.C. detainer 40 days later, (approx).

I was told by UTM Lane Gregg (who's signature is on the provided Segrigation Report) that I was "No longer welcome in C2". Also that "as long as I'm

-9-

[UTM], here you won't come back". UTM Gregg also made the statement both at the time in question & at prior times in the presence of UTS. Zachery Little that they "don't know why I was over here, (C-2 Cellhouse P.C. Unit), & if I (UTM Gregg) had anything to say about it I wouldn't be". This was after UTM Gregg called me into UTS Little's office & began screaming at me. Using profanity, & threatening me with "being kicked out of the "MMU" (P.C.) program after I beat a bogus disciplinary report written by UTS. Zachery Little a few weeks prior.

    Because of the 9 months (approx) that I was forced to endure after the 9-17-25 segregation placement. Eventually I elected to try to return to General Population against my better judgement. This choice was essentially the lesser of 2 evils because I wasn't allowed to transfer. (despite my "Holdover pending transfer status"). Feeling that this was my only option to have access to law library, daily outdoor yard/exceerese, college courses. etc.

    Approximately 1 month after I returned to General Population, shortly before 3:00 PM I was

called to UTM Hoepners office. UTM Hoepner asked me, "Are you ok? Do you have any problems out here?" To which I responded "As far as I know, No I don't have any problems that I know of.". I then said "It probably doesn't help that your officers make no secret of my having been on C-2.". I then asked "Why do you ask, what are you hearing?" UTM Hoepner then said "We have heard you may have problems so we had to ask.". I again asked "What are you hearing, tip me so I can at least have some idea what to look out for." His response was that "We don't have specifics but were told to ask you by administration.".

Because the situation was downplayed in seriousness by the Lt's & no specifics were provided. I made the decision to sign a P.C. Waiver.

2 days later inmate Jaqueline Beans battered me from behind in the E-1 dayroom with a weapon. This battery resulted in my receiving a fractured/broken orbital (left) & left upper jaw bone, loss of periferal vision in my left eye. I can't focus on standard font/type have constantly blurry vision & a floating spot in the same eye. After subsiquent vision test it was determined that my vision has deterrioated from 20/10 to 20/60.

—11—

It's unequivocal that E.D.C.F. Administration had some advanced knowlege of what was going to happen. At no time did ANY of the named individuals ever suggest that I could or should be placed in Segregation / Protective Custody. So much so that I had to request to sign the P.C. Waiver.

The same day of the Battery I was taken back to C-2 (P.C. Unit) after it was deemed that I would not be safe to reside in population or segregation.

Please keep in mind that everytime I was placed in segregation retaltorily by UTM Gregg it was into A1 Cellhouse. Because Defendant Janelle Buchanan was the U.T.M. I was repeatedly mistreated, served tainted food, had paperwork "lost", denied basic amnenities, ie (toilet paper, cleaning supplies, sheets & blankets). When I brought these things to her (Defendant Buchanan's) attention, she told me "Too bad, if I wasn't a defendant I could help you."

Also of note is that in order to receive medical attention while I was in A1 I would be seen by Defendant Payne-Delono. One such of these encounters was detailed in a previously filed Notice of Intent. Since

I was first placed under UTM Gregg's supervision I haven't made a secret of my preperation & filing of this Civil Action. In turn he has made no secret of his distain for my filing the Action. There are 2 Segrigation cellhouses at E.D.C.F. It was well known that multiple defendants in this Civil Action worked for were posted) in A1 cell house. I had expressed this concern to UTM Gregg on multiple occasions before his retalitory placement of me in Segrigation under the tutalige of those Defendants. After my first round of mistreatment after UTM Gregg's first unjustified placement in segrigation I notified UTM Gregg again of the mistreatment suffered at the Defendants hands. He ignored everything I said & again placed me in Segrigation un justified.

All of these things serve to show a clear patern of retalitory behavior at the hands of Multiple KDOC employees. These actions are intentional & rise above the minimum circumstantial standard in their nataure. They serve to prove a pattern of retalitory behavior perpitrated by KDOC & Centurion employees

against me since the filing of this Complaint. None of these acts were ever perpetrated against me before it's filing.

<u>Skinner v. Uphoff</u>, 234 F. Supp. 2d 1208, 1215-16 (D. Wym 2002)
"Failure to investigate assaults + a "code of silence" about staff misconduct that contributes to assault constituted's deliberate indifference."

<u>Abrams v. Hunter</u>, 910 F. Supp. 620, 625-26 (M.D. Fla 1995)
"acknowleging potential liability based on awareness of overall substantial risk of serious harm from inmate violence."

<u>Boone v. Elrod</u>, 706 F. Supp. 636, 638 (N.D. Ill. 1989)
"Captain, Corrections director, + Sheriff "Cannot hide behind their underlings" when they actually had notice of threats to the plaintiff.")

<u>McGill v. Duckworth</u>, 726 F. Supp. 1144, 1157 (N.D. Ind 1989)
"prison officials had a state law duty to "take reasonable precaution under the circumstances to preserve [prisoner's] life, health, + safety"

Since the perpitration of these intentionally malicious actions I have become fearfull of what may happen should I continue to persue this action + initiate the grievance

process required for me to file a seperate Civil Complaint about the recent retalitory actions & Due Process violations related to the intentional, malicious & capracious unjustified segrigation placement & seicure of legal papers.

These malicious actions have had an agrivating & adverse effect on my P.T.S.D. & anxiety levels, not to mention my appetite & sleep patterns. The damage suffered to my vision has yet to be addressed by an optomitrist or doctor.

### Conclusion

To summarize there is a history of these retalitory events that have been discussed in a previous Notice of Intent. They speak about Defendant Buchanan's refusal to address the issues discussed earlier in this Notice & those in the previous filing. There have been multiple Grievances filed about UTM Gregg's behavior & retaliation. All still remain un answered or the issue was not addressed at all in the response given. Since this complaint has passed through screening the incidences of retalitory behavior have increased

-15-

in severity & frequency. So much so that I now fear for my health & safety at every turn. Because of my having filed this initial complaint it has been made clear to me that this is merely the tip of the "retaliation iceburg." This fear has kept me from persuing further civil action, grievance appeals, etc.

By confinsecating my finished, unfiled legal documents they have set me back months in the prosicution of this case. It has yet to be justified to me how this serves ANY peniological intrest.

Since my last filing of a Notice, Defendant Buchanan has been "walked out" & fired from K.D.O.C. employ. This was a direct result of her intentionally, negigliently placing a known White Supremisist into the cell with a Vice Lorel despite his protestation (the White Supremisist). This resulted in the death of the White Supremisist. Due to lack of staff doing regular security cheeks the death wasn't discovered for <u>3 DAYS</u>!

Keep in mind the issues discussed in the previous Notice of Intent were at the hands of Defendant's Buchanan, Payne-Delano, & UTM Gregg. Defendant

-16-

Payne-Delano proved out that had she actually provided me with the exams & vital signs checks the likelyhood of her having diagnosed the appendicitice correctly would have been exponetially increased. Thereby potentially reducing the period of my suffering greatly.

All of these issues culminatee to form a picture that shows the negligent & retalitory actions that still continue to this day.

It is my hope that something be done to stop this conduct. Since I will not be safe in any Maximum or Medium Facility in the State. That something be done to ensure a transfer to a lower custody (minimum) facility. At the very least to have my stolen legal documents returned & those responsible for their theft held accountable.

Respectfully Submitted

_Lewis M. George_ #81547
Lewis M. George #81547

Attachment B, IMPP 20-105A
Effective 05-13-22

# Kansas Department of Corrections
## Administrative Restrictive Housing Report

TO: Warden Tommy Williams                          Report Number: 24-1254
FROM: UTS S. Berry

Date This Report Filed              09/17/2024          Time Report Filed 1130

Date of Restrictive Housing placement 09/17/2024        Time of Placement 1200

Resident Name: George, Lewis # 81547                    Reason(S) For Restrictive Housing (Including Rule No. and Title)

Moved from Cell # C2-123 to Restrictive Housing Cell #: A1-110     IMPP 20-104-III.C. Pre-Hearing Detention

☒ Pre-Restrictive Housing hearing conducted

☐ Pre-Restrictive Housing hearing NOT conducted (Explain) _____

Facts: In pursuant to, IMPP 20-104-III.C. Pre-Hearing Detention Resident George is being placed on administrative segregation status pending the outcome of a disciplinary report for fighting. It is alleged that on 9/16/2024 at approximately 1640 hrs, resident George engaged in a physical altercation with resident Thurman 125890. This placement is being completed for the safety and security of the facility.

☐ This placement is an Involuntary Protective Custody due to PREA Concerns (Respond to next two (2) sections)

What is the basis for the facility's concern for the resident's safety?

_____

What is the reason no alternative means of separation can be arranged?

_____

_____ Date 9/17/24          Approved By: _____ Date 9/17/24
Signature and Title of Reporting Officer              Shift Supervisor or RH Unit Mgr.

                                                      _____ Date __/__/__
                                                      Warden Authorization (If Needed)

****************************************************************************************

RESIDENT ACKNOWLEDGMENT:

I received a copy of this report on: Date 9/17/24 Time: 12:23 pm

_____ # _____           _____
Resident Signature and Number        Staff Witness and Title

Record this Document in
ImagingOriginal to Master File
Copy to: Warden
         Resident

Notice of Intent +
Legitimate concern
PS-18-