IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEWIS MICHAEL GEORGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-3123-HLT-TJJ |
| ) | |
| VANESSA PAYNE-DELANO, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Katherine Firman, Anthony Luna, Jennell Buchanan,[1] and Tommy Williams (the "KDOC Defendants"), respectfully request, through Assistant Attorney General Matthew L. Shoger, that this Court dismiss the claims against them under Fed. R. Civ. P. 12(b)(1) and (b)(6) or Fed. R. Civ. P. 56. The KDOC Defendants respectfully request that this motion be granted and this action be dismissed or, in the alternative, summary judgment be granted in their favor. They attach one new exhibit – Exhibit A (KASPER Information Sheet) – and state the following in support.

## NATURE OF THE CASE

Plaintiff Lewis Michael George alleges that on July 7, 2023 – while incarcerated under the Kansas Department of Corrections (KDOC) at El Dorado Correctional Facility (EDCF) – the KDOC Defendants disregarded his pleas for medical assistance, which caused a delay in diagnosing his appendicitis. (Doc. 8-1 at 12-13.) According to George's allegations, on the morning of July 7, George complained to Defendant Firman of a sharp pain, and a Centurion nurse came to check on him. (Doc. 8-1 at 9.) The nurse called a nurse practitioner who

---

[1] Defendant Buchanan's name is misspelled in the Amended Complaint.

determined that based on George's history of kidney stones, it would be appropriate to administer Tylenol and let any stones pass. (Doc. 8-1 at 9.) Around 1:30-2:00p.m., the pain still continued, and Defendant Firman informed George that Defendant Buchanan had contacted medical and a nurse would come by with additional pain medication. (Doc. 8-1 at 10.) Around 3:15p.m., Defendant Firman and Defendant Luna escorted George to the medical clinic to receive Toradol and Phenergan. (Doc. 8-1 at 10.) The pain worsened further, and around 11:00pm George was transported to the hospital for treatment. (Doc. 8-1 at 10-11.) George was taken to an El Dorado hospital where it was determined that he had appendicitis, his condition was stabilized, and he received surgery the next day. (Doc. 8-1 at 11.)

George filed this lawsuit on July 19, 2024. (Doc. 1.) He filed a corrected complaint on July 30, 2024. (Doc. 8.) On screening under the Prison Litigation Reform Act (PLRA), the Court dismissed Count V, which was a conspiracy claim. (Doc. 19 at 8; Doc. 8-1 at 29-30.) George has four remaining counts under § 1983 against the defendants. (Doc. 8 at 2-4; Doc. 8-1 at 15-29.) George additionally cites to "K.S.C.C.P. 60-19a02" and Fed. R. Civ. P. 65 as a basis of recovery. (Doc. 8 at 2; Doc. 8-1 at 4.) All four remaining numbered counts allege a violation of the Eight and Fourteenth Amendments, phrased in different ways. Count I alleges failure to render aid. (Doc. 8 at 3; Doc. 8-1 at 15-18.) Count II alleges deliberate indifference to medical needs. (Doc. 8 at 3; Doc. 8-1 at 19-21.) Count III alleges denial to medical care. (Doc. 8 at 4; Doc. 8-1 at 22-25.) Count IV alleges cruel and unusual punishment. (Doc. 8-1 at 26-29.) All four counts appear to be different ways of phrasing the same legal theory of Eighth-Amendment deliberate indifference to serious medical needs, as incorporated against the states through the Fourteenth Amendment.

George requests an order declaring that the defendants have acted in violation of the U.S.

Constitution, an injunction compelling the defendants to attend medical training on appendicitis procedures, as well as an injunction compelling the defendants to attend training on responding to calls for help and aid. (Doc. 8-1 at 7; *see also* Doc. 8 at 5.) George further requests $4,000,000 total in compensatory damages. (Doc. 8-1 at 7; *see also* Doc. 8 at 5.) George also requests an unspecified amount of punitive damages. (Doc. 8 at 5.) The KDOC Defendants now file their Motion to Dismiss or, in the alternative, for Summary Judgment.

The Court should dismiss the official-capacity claims for lack of subject-matter jurisdiction due to Eleventh-Amendment immunity. The Court should dismiss the individual-capacity claims for injunctive and declaratory relief for lack of subject-matter jurisdiction as effectively official-capacity claims subject to Eleventh-Amendment immunity. The Court should further dismiss the injunction claims for lack of standing due to lack of an ongoing injury. The Court should dismiss the § 1983 claims in light of qualified immunity for failure to state a claim. Alternatively, the Court should grant the KDOC Defendants summary judgment on the § 1983 claims due to failure to exhaust administrative remedies. Finally, the court should decline to exercise supplemental jurisdiction over any remaining state-law claims.

## STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS

1. Lewis Michael George was in the custody of the Kansas Department of Corrections at the El Dorado Correctional Facility at all relevant times in his complaint. (Exhibit A at 4; Doc. 32-1 at 3; *see also* Doc. 8-1 at 1-2; Doc. 32 at 2.)

2. George is currently housed at the El Dorado Correctional Facility. (Exhibit A at 4; Doc. 32-1 at 3; *see also* Doc. 8 at 1; Doc. 8-1 at 1-2; Doc. 32 at 3-4; Docket (showing George's address of record for purposes of service).)

*George's medical timeline leading to his appendectomy*

3. Prior to July 7, 2023, George was experiencing pain in his upper right quadrant of his abdomen. (Doc. 32-4 at ¶¶ 8-9; Doc. 28 (M2 at 97-100, 103-06); *see also* Doc. 8-1 at 9.)

4. George has a history of kidney stones. (Doc. 32-4 at ¶¶ 8, 11, 16; 32-6 at ¶¶ 8-9; Doc. 28 (M2 at 99, 112-13, 119); *see also* Doc. 28; Doc. 8-1 at 9.)

5. At 9:54 a.m. on July 7, 2023, Centurion nurse Payne-Delano went to George's cell because he requested medical care. George agreed to take Tylenol. (Doc. 32-6 at ¶ 8; Doc. 32-4 at ¶ 10; Doc. 28 (M2 at 108-11); *see also* Doc. 8-1 at 9.)

6. George received medical care from medical professionals multiple times throughout the day, including receiving medication as ordered by the on-call physician. (Doc. 32-4 at ¶¶ 11-17; Doc. 32-6 at ¶¶ 9-10; Doc. 28 (M2 at 112-120); *see also* Doc. 8-1 at 10-11.)

7. Due to changing symptoms, including pain in a different place in his abdomen, George was taken to the emergency room at 11:15 p.m. on July 7, 2023. (Doc. 32-4 at ¶ 13, 16; *see also* Doc. 8-1 at 11.)

8. On July 8, 2023, George underwent a laparoscopic appendectomy. (Doc. 32-4 at ¶ 14; Doc. 28 (M2 at 121, 124, 132); *see also* Doc. 8-1 at 11.)

9. George was returned to the correctional facility on July 12, 2023. (Doc. 32-4 at ¶14; Doc. 28 (M2 at 121-24, 132).)

*Grievances made by George*

10. George submitted an emergency grievance on July 14, 2023, related to his medical events that arose on July 7, 2023, alleging defendants Firman and Buchanan did not adequately respond. (Doc. 32-9 at ¶ 4, pgs. 4-8; *see also* Doc. 8-3 at 2-6)

11. Warden Williams responded on July 20, 2023, stating that it was not an emergency under

K.A.R. 44-15-106 and forwarded it to Defendant Buchanan for a response. (Doc. 32-9 at ¶ 4, pg. 3; *see also* Doc. 8-3 at 1.)

12. Defendant Buchanan responded that George failed to attach proof of an attempt at informal resolution. Buchanan also recounted the events of that day and recalled that medical did not feel a hospital visit was necessary during the time Buchanan was working that day. Buchanan determined no further action would be taken in response. (Doc. 32-8 at 6; Doc. 32-9 at 13; Doc. 32-12 at ¶ 5; *see also* Doc. 8-4 at 6.)

13. George did not appeal to the Secretary of Corrections and took no further action. (Doc. 32-8 at ¶ 2 (saying that George only appealed one grievance regarding July 7, 2023, and it was not this one).)

14. George filed grievance CA00023040 on March 6, 2024, that related to his medical events that arose on July 7, 2023, alleging that unspecified KDOC staff did not adequately respond. (Doc. 32-8 at ¶ 2, pg. 4; Doc. 32-9 at ¶ 5, pg. 11; *see also* Doc. 8-4 at 3.)

15. The next day, a unit team member denied the grievance and responded that the substance of the grievance had been previously answered in response to a different grievance, that the current grievance was out of time, and that George had attached the earlier response from Defendant Buchanan. (Doc. 32-8 at 7; Doc. 32-9 at ¶ 5, pg. 14; *see also* Doc. 8-4 at 5.)

16. George appealed the unit team member's response to the Warden on March 8, 2024. (Doc. 32-8 at 4; Doc. 32-9 at 11; *see also* Doc. 8-4 at 3.)

17. The Warden responded to the grievance appeal on March 22, 2024, stating that the original response from Defendant Buchanan was appropriate and denied it. (Doc. 32-9 at 10; *see also* Doc. 8-4 at 2.)

18. George then appealed the Warden's decision to the Secretary.  (*See* Doc. 32-8 at 3; Doc. 32-9 at 9; *see also* Doc. 8-4 at 1.)

19. The Secretary designee, Darcie Holthaus, responded to the appeal by George on April 2, 2024, that the previous response to the emergency grievance was appropriate and that it was also filed out of time. (Doc. 32-8 at ¶ 2, pg. 3; Doc. 32-9 at 9; *see also* Doc. 8-4 at 1.)

20. George did not timely file any other grievances pertaining to his medical incident on July 7, 2023. (Doc. 32-8 at ¶¶ 2-3; Doc. 32-9 at ¶ 3; Doc. 32-14 at ¶ 3.)

*Personal-injury claims made by George*

21. George submitted a personal-injury claim on May 20, 2024 that referenced his July 7, 2023 medical condition, alleging that Defendants Firman, Luna, and Buchanan did not adequately respond. (Doc. 32-10 at ¶ 3, pgs. 4-10; *see also* Doc. 8-10 at 14-21.)

22. The claim was returned unprocessed by the facility as untimely and in excess of the allowable amount. (Doc. 32-10 at ¶ 3, pgs. 2-3; *see also* Doc. 8-10 at 12-13.)

23. There is no record of George taking any further action on the claim or appealing the decision. (Doc. 32-10 at ¶ 3.)

24. George did not timely file any other personal-injury claims pertaining to his medical incident on July 7, 2023. (Doc. 32-10 at ¶ 3; 32-15 at ¶ 3.)

*Other materials*

25. George also complained about the KDOC Defendants in a form to the Joint Committee on Special Claims Against the State Secretary of Corrections dated June 14, 2024, seeking $300,000.00. (Doc. 8-10 at 2-11.)

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. George, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And a *pro se* litigant is expected to adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.*

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person

would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

### *Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). The court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *Id.* "[W]hile courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Facts must be shown through affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

> [T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact. [citation omitted] To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant.

*Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021).

### I. The Eleventh Amendment bars George's § 1983 claims against the KDOC Defendants in their official capacities.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004).

Here, George requests declaratory relief as well as monetary relief in the form of compensatory and punitive damages (Doc. 8 at 5; Doc. 8-1 at 7), all of which are barred by the Eleventh Amendment as asserted against the KDOC Defendants in their official capacities. George also seeks an injunction compelling the KDOC Defendants to attend medical training on how to respond to calls for help and identifying an appendicitis. (Doc. 8-1 at 7.) But none of what George is requesting falls into the narrow exception of Eleventh Amendment immunity as he is not seeking prospective relief for *ongoing* violations of federal law but rather prospective relief based only on an alleged *past* violation, which he does not plausibly allege is ongoing. Therefore, George's claims against the KDOC Defendants in their official capacities should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

## II. Declaratory and injunctive relief is not available against state officials in their individual capacities under § 1983.

Claims for declaratory or injunctive relief against government officials, even if phrased as individual capacity claims, are effectively official capacity claims because the "plaintiff seeks to change the behavior of the governmental entity." *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988). Accordingly, under § 1983, which necessarily involves actions under the color of state law, "a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1748 (2023).[2]

Here, George cannot bring claims under § 1983 for declaratory and injunctive relief against the KDOC Defendants in their individual capacities. Those claims are effectively official capacity claims and should be dismissed for lack of subject matter jurisdiction due to Eleventh Amendment immunity as discussed in the previous section.

## III. George lacks standing for injunctive relief due to a lack of an ongoing injury.

To establish federal subject-matter jurisdiction, plaintiffs must show that they have standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of requirements: injury in fact, causation, and redressability. *Id*. at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04. And "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

---

[2] *But see Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (in dicta, describing the *Ex Parte Young* exception as applying to "suits seeking declaratory and injunctive relief against state officers in their individual capacities").

528 U.S. 167, 185 (2000). For example, a party may lack standing to bring an injunction even when the party has standing to bring claims for other kinds of relief. *See City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

The first element of the standing analysis requires that a plaintiff allege and ultimately prove "an 'injury in fact'—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* at 103. "The 'injury in fact' requirement differs depending on whether the plaintiff seeks prospective or retrospective relief." *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014). To recover damages, a form of retroactive relief, it suffices to demonstrate a past harm that is concrete and particularized. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1284, 1290 n.16 (10th Cir. 2004). But "[w]hen prospective relief—such as an injunction—is sought, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Colorado Cross-Disability Coal.*, 765 F.3d at 1211. Here, George only alleges past injuries. So he does not have standing to request injunctive relief.

**IV.** **If the Court has jurisdiction, it should dismiss the claims for failure to state a claim because qualified immunity applies when the alleged conduct did not violate clearly established law.**

The KDOC Defendants are entitled to qualified immunity because there was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that their alleged actions violated clearly established law, particularized to the facts of this case. Specifically, George has not shown any law that puts the KDOC Defendants on notice that relying on medical personnel's diagnosis was a violation of federal law. While it is clearly established prison officials may not act with deliberate indifference to an inmate's health or safety, *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262-63 (10th Cir. 2022), no binding precedent in this circuit

11

clearly establishes that informing medical personnel of an inmate's condition and then proceeding according to the medical personnel's direction is unconstitutional. *See Gallagher v. Finney*, No. 93-3389-DES, 1994 WL 725297, at *2 (D. Kan. Dec. 14, 1994) (citing K.S.A. 75-5249 in concluding that decisions involving medical judgments are reserved to the physicians employed by the state, and the prison administrator's reliance upon their opinion is sufficient to insulate the administrator from liability under the Eighth Amendment); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) ("defendants were entitled to rely on the diagnosis they received from the state medical authorities who examined plaintiff") (cited approvingly by *Hartz v. Sale*, No. 14-3237-DDC, 2016 WL 4943970, at *9 (D. Kan. Sept. 16, 2016), *aff'd,* 687 F. App'x 783 (10th Cir. 2017)).

Deliberate indifference has both an objective component and a subjective component. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For the objective component for "serious medical needs" claims, the plaintiff must show that the prisoner's medical need was "sufficiently serious." *Id.* (citing *Farmer*, 511 U.S. at 834). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* Alternatively, the objective prong is met if a delay in medical care causes a sufficiently serious "resulting harm," *Teetz ex rel. Estate of Lofton v. Sedgwick Cnty.*, 2022 WL 17403164, at *8 (D. Kan. 2022) (citing *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022)), such as  "lifelong handicap, permanent loss, or considerable pain." *Beauford*, 35 F.4th at 1262.

The *subjective* component requires showing that the prison official had a culpable state of mind. *Id.* at 1262 (citing *Farmer*, 511 U.S. at 834). The plaintiff "must adduce sufficient facts to show the defendant knew of and disregarded 'an excessive risk to inmate health or safety.'"

*Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1173 (10th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Even if both the objective and subjective prongs are met, "a constitutionally legitimate justification" may still be shown. *Arocho v. Nafziger*, 367 F. App'x 942, 952 (10th Cir. 2010). This should be determined, not with the benefit of hindsight, but based on what the official reasonably knew at the time. *See Strain v. Regalado*, 977 F.3d 984, 996 (10th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (saying in the context of the deliberate-indifference standard that "courts do not judge the constitutionality of particular actions 'with the 20/20 vision of hindsight'"). Prison officials have a "legitimate penological interest of maintaining control and discipline in the prison facility." *Evans v. Cawthorn*, No. 16-3095-DDC, 2019 WL 5787952, at *8 (D. Kan. Nov. 6, 2019).

Here, George cannot demonstrate the subjective element because the KDOC Defendants informed the medical staff of George's pain on July 7, 2023, and relied on their medical opinion. Prison officials who knew of a substantial risk to inmate health or safety may be free from liability if they responded reasonably to the risk, even if the harm was not averted. *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (citing *Farmer*, 511 U.S. at 843). In his complaint, George concedes that Defendant Firman, Buchanan, and Luna reported to medical personnel on July 7, 2023, the pain that he was enduring and that they followed recommendations from medical personnel. (*See* Doc. 8-1 at 9-10.) George cannot establish a violation of clearly established law because there is no constitutional violation when the KDOC Defendants acted in reliance on the medical personnel's response. *See McCracken*, 562 F.2d at 24. George sues

Defendant Williams under a failure-to-train theory (Doc. 8-1 at 18, 21-22, 25, 28-29), but he has not shown clearly established law showing that such a theory is viable in the absence of a plausibly alleged underlying violation by any other KDOC staff.

Accordingly, no clearly established law would have put the KDOC Defendants on notice that their actions were unlawful under these circumstances. The KDOC Defendants are entitled to qualified immunity as a matter of law. Therefore, the claims against the KDOC Defendants should be dismissed for failure to state a claim.

### V. Alternatively, the KDOC Defendants are entitled to Summary Judgment because George failed to exhaust his administrative remedies under the PLRA.

#### A. Exhaustion of administrative remedies is mandatory under the PLRA.

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). "The issue of Plaintiff's failure to exhaust his available

14

administrative remedies before filing his lawsuit must be determined before reaching the merits of his lawsuit." *See Bateast v. Orunsolu*, No. 22-3093-JWL, 2023 WL 3072669, at *5 (D. Kan. Apr. 25, 2023) (citing *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010)).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, this regulation applies to George's § 1983 claim's because his Complaint involves the alleged actions of EDCF employees. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden; and (4) appeal to the secretary of corrections. *Lindsey*, 2021 WL 483855, at *2; K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). At step two, the inmate must include documentation of the informal-resolution attempt. *See* K.A.R. 44-15-101(b), -102(a)(1).  And step two must occur within 15 days of discovery of the issue, not counting weekends or holidays. *See* K.A.R. § 44-15-101b. If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

As the Tenth Circuit has recognized, grievances under K.A.R. § 44-15-101 *et seq.* (Article 15) and personal-injury claims under K.A.R. § 44-16-104a (Article 16) are "separate"

15

and "distinct." *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *1 to *5 (10th Cir. Aug. 11, 2023). Exhaustion for § 1983 constitutional claims is accomplished through Article 15 grievances, and exhaustion for personal-injury claims is separately accomplished through Article 16 claims for personal injury. *Id.*

### B. George filed two grievances and a personal-injury claim that generally mention the KDOC Defendants regarding his July 7, 2023, medical incident.

George is currently incarcerated at EDCF (Defendants' Statement of Facts ("DSOF") ¶ 2)), and he brings conditions-of-confinement claims under § 1983, so the PLRA's exhaustion requirement applies. *See* 42 U.S.C. § 1997e(a).

*1. Grievances*

George filed an emergency grievance on July 14, 2023. (DSOF ¶10.) In that grievance and its appeals, George complains about the July 7, 2023 medical incident where he alleges the KDOC Defendants did not adequately respond to. (DSOF ¶ 10.) The grievance was sent to the Warden who responded on July 20, 2023, stating that it was not an emergency under K.A.R. 44-15-106, and then forwarded it to a unit team member for a response. (DSOF ¶ 11.) George failed to appeal to the Secretary of Corrections and took no further action. (DSOF ¶ 13.)

George filed grievance CA0023040 on March 6, 2024. (DSOF ¶ 14.) In that grievance, George complains about his July 7, 2023 medical incident, which he alleges unspecified KDOC staff did not adequately respond to. (DSOF ¶ 14.) The grievance was denied by the unit team on March 7, 2024 (DSOF ¶ 15), and by the warden on appeal on March 22, 2024 (DSOF ¶ 17.) George then appealed to the Secretary of Corrections, who responded on April 2, 2024 that the staff responded appropriately and that it was past the time allowable for submitting a grievance. (DSOF ¶¶ 18-19.)

George did not timely file any other grievances pertaining to his medical incident on July

16

7, 2023. (DSOF ¶ 20.)

### 2. Personal-injury and property-loss claims

George filed a personal-injury claim on May 20, 2024. (DSOF ¶ 21.) In that claim, George complains about the July 7, 2023 medical incident where he alleges the KDOC Defendants did not adequately respond to. (DSOF ¶ 21.) George alleged that he had filed a previous personal-injury claim on July 18, 2024 but there is no record of it and he has not submitted any admissible evidence in support of his allegation. (Doc. 8-10 at 14; DSOF ¶ 24.) The May 20, 2024 personal-injury claim was returned unprocessed by the facility as untimely and in excess of the allowable amount. (DSOF ¶ 22.) George did not take further action on the denial of this claim. (DSOF ¶ 23.)

George did not timely file any other personal-injury claims pertaining to his medical incident on July 7, 2023. (DSOF ¶ 24.)

### 3. Other materials

George also complained about the KDOC Defendants in a form to the Joint Committee on Special Claims Against the State Secretary of Corrections dated June 14, 2024, seeking $300,000.00. (DSOF ¶ 25.) But this was not a grievance.

## C. None of George's grievances or personal-injury claims satisfy the exhaustion requirement under the PLRA for his § 1983 claims.

### 1. Grievances

The grievance CA00023040 on March 6, 2024, was untimely and not filed within 15 days of the alleged incident on July 7, 2023.  The unnumbered grievance originally filed as an emergency grievance dated July 14, 2023, was not appealed to the Secretary of Corrections. Neither of these two grievances satisfy the exhaustion requirements under the PLRA.

### 2. *Personal-injury and property-loss claims*

As the Tenth Circuit has recognized, grievances under K.A.R. § 44-15-101 *et seq.* (Article 15) and personal-injury claims under K.A.R. § 44-16-104a (Article 16) are "separate" and "distinct." *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *1 to *5 (10th Cir. Aug. 11, 2023). Exhaustion for § 1983 constitutional claims is accomplished through Article 15 grievances, and exhaustion for personal-injury claims is separately accomplished through Article 16 claims for personal injury. *Id.* Therefore, George's May 20, 2024 personal-injury claim does not satisfy the exhaustion requirement for his § 1983 constitutional claims here. Regardless, it was also untimely under the relevant time limits. *See* K.A.R. § 44-16-104a(a) (setting a 10-calendar-day time limit for personal-injury claims); (*see also* Doc. 32-10 at 2).

For the reasons in this section, George failed to exhaust administrative remedies and the Court should grant the KDOC Defendants summary judgment on George's § 1983 claims under Rule 56 for failure to exhaust.

## VI. The Court should decline to exercise supplemental jurisdiction for the remaining state-law claims.

### A. The Court should decline to exercise supplemental jurisdiction over the state-law claims given the absence of a sufficient federal claim.

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Here, all federal claims should be dismissed for the reasons outlined above, and the court should decline to exercise jurisdiction over any remaining state claims.

### B. Alternatively, the Court should dismiss the state-law claims for lack of a private right of action.

If the Court decides to exercise supplemental jurisdiction, it should dismiss the state-law

claims against the KDOC Defendants. George appears to cite K.S.A. 60-19a02 (Doc. 8 at 2 (citing "K.S.C.C.P. 60-19a02"); Doc 8-1 at 4 (same)), which does not provide a private cause of action against the KDOC Defendants. Rather, it is a statute limiting what a jury may award in its verdict in a personal injury action. George also cites K.S.A. 75-6056 (Doc. 8 at 2), which does not exist. Alternatively, neither cited statute creates a claim for damages if its provisions are violated, much less a claim that could survive the State's immunity under the Kansas Tort Claims Act. *See Lewis v. City of Lawrence*, 19-2636-KHV, 2020 WL 1446868, at *5 (D. Kan. Mar. 25, 2020) ("The exceptions to the Kansas Tort Claims Act provide immunity to governmental entities or employees in certain situations.") Further, George does not even allege how any of the KDOC Defendants violated either cited statute, so he fails to state a claim where relief may be granted.

## CONCLUSION

For all these reasons, the KDOC Defendants request that the Court grant this motion.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for the KDOC Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

    Katrina L. Smeltzer
    Sandberg Phoenix & von Gontard P.C.
    4600 Madison Avenue, Suite 1000
    Kansas City, MO 64112-3032
    ksmeltzer@sandbergphoenix.com
    *Attorney for Centurion Defendants*

    Marcus Meyer
    Sandberg Phoenix & von Gontard P.C.
    4600 Madison Avenue, Suite 1000
    Kansas City, MO 64112
    mmeyer@sandbergphoenix.com
    *Attorney for Centurion Defendants*

    Jon D. Graves
    Hutchinson Correctional Facility
    P.O. Box 1568
    Hutchinson, KS 67504-1568
    jon.graves@ks.gov
    *Attorney for Interested Party Kansas Department of Corrections*

    Natasha M. Carter
    Kansas Department of Corrections
    714 SW Jackson Street, Suite 300
    Topeka, KS 66603
    natasha.carter@ks.gov
    *Attorney for Interested Party Kansas Department of Corrections*

I also certify that a copy of the above will be served on June 11, 2025, by means of first-class mail, postage prepaid, addressed to:

    Lewis Michael George #81547
    El Dorado Correctional Facility
    P.O. Box 311
    El Dorado, KS 67042
    *Plaintiff, pro se*

                                          */s/ Matthew L. Shoger*
                                          Matthew L. Shoger
                                          Assistant Attorney General