IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEWIS MICHAEL GEORGE,

    Plaintiff,

    v.

VANESSA PAYNE-DELANO, *et al.*,

    Defendants.

Case No. 5:24-cv-03123-HLT-TJJ

**MEMORANDUM AND ORDER**

Plaintiff Lewis Michael George acts pro se and is an inmate in the Kansas prison system.[1] He suffered an appendicitis in July 2023 while an inmate at the El Dorado Correctional Facility (EDCF) and was hospitalized. Plaintiff alleges that he remained in agonizing pain for an extended period because prison officials and medical personnel failed to address his potentially life-threatening condition timely and appropriately. He asserts claims against multiple defendants under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights and under state law.

All the defendants move for dispositive relief. Defendants Vanessa Payne-Delano, Gordon Harrod, and Breanna Johnston (Centurion Defendants) move to dismiss. Doc. 45. And Defendants Katherine Firman, Anthony Luna, Jennell Buchanan, and Tommy Williams (KDOC Defendants) move to dismiss or, in the alternative, for summary judgment. Doc. 60. The Court ultimately finds that jurisdictional hurdles prevent most claims from moving forward and the failure to exhaust warrants summary judgment on the rest. The Court explains its rationale below and takes the motions in reverse order, but the upshot is the case is closed.

---

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally and held to a less stringent standard than pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

I.    **FACTUAL BACKGROUND**[2]

Plaintiff was an inmate at EDCF in July 2023. He has a history of kidney stones. He had experienced pain in the upper right quadrant of his abdomen before July 7, 2023. Plaintiff requested medical care in the morning on July 7, 2023. He was taken to the emergency room at 11:15 p.m. that night and underwent a laparoscopic appendectomy on July 8. Plaintiff returned to EDCF on July 12.

Plaintiff filed an "emergency" grievance under K.A.R. 44-15-106 on July 14, 2023. The grievance related to the July 7 medical events. Plaintiff alleged Defendants Firman and Buchanan, who are KDOC employees, did not appropriately respond to his health situation. Warden Tommy Williams responded on July 20 to Plaintiff's grievance and stated that it wasn't an "emergency" under K.A.R. 44-15-106. Warden Wiliams forwarded the grievance to Buchanan (an EDCF Unit Team Member). Buchanan responded the next day (July 21) that Plaintiff failed to attach proof of an attempt at informal resolution in connection with the grievance, which is an administrative requirement under K.A.R. 44-15-102(a). Buchanan therefore indicated that no further action would be taken on it. Plaintiff did not appeal Buchanan's decision to either Warden Williams or to the Secretary of Corrections.

Plaintiff filed another grievance related to his July 2023 appendicitis months later, on March 6, 2024. A unit team member denied the grievance the next day. A KDOC unit team member responded that the substance of the grievance had been previously answered in Buchanan's response to Plaintiff's July 2023 grievance (which Plaintiff attached to the March 2024 grievance)

---

[2]   This factual background is based on the summary judgment motion filed by KDOC Defendants. KDOC Defendants set forth numbered paragraphs and cited to the record. The record supports the stated facts. KDOC Defendants also sent Plaintiff a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment. Doc. 61. Plaintiff failed to properly controvert any facts. The facts in the motion are thus supported, uncontroverted, and deemed admitted for purposes of this motion. *Winter v. Mansfield*, 2021 WL 4354617, at *3 (D. Kan. 2021), *aff'd* 2022 WL 3662464 (10th Cir. 2022).

and that his March 2024 grievance was out of time. Plaintiff appealed the unit team member's response to Warden Williams on March 8. Warden Williams responded on March 22 and denied the grievance. Plaintiff appealed Warden William's decision to the Secretary of Corrections. The Secretary of Correction's designee responded on April 2 and noted that the response to the July 2023 emergency grievance was appropriate and that the March 2024 grievance was filed out of time.

Plaintiff did not file another grievance, but he did file a personal injury claim on May 20, 2024, stemming from the July 2023 appendicitis. Doc. 32-10 at 1. The claim was returned unprocessed as untimely and in excess of the allowable amount. There is no record of Plaintiff taking any further action on the claim or appealing the decision. Plaintiff did not file another personal injury claim pertaining to his July 2023 medical incident. But he did file a complaint with the Joint Committee on Special Claims Against the State Secretary of Corrections in June 2024, seeking $300,000. Doc. 8-10 at 2.

Plaintiff filed this lawsuit in July 2024.

## II. ANALYSIS

Plaintiff sues Centurion Defendants and KDOC Defendants in their official and individual capacities and seeks monetary damages as well as retrospective and prospective equitable relief under § 1983 and Kansas state law. All defendants seek dispositive relief. The Court starts with the motion filed by KDOC Defendants.

### A. KDOC Defendants (Doc. 60)

KDOC Defendants filed a comprehensive motion that discusses Plaintiff's claims based on the capacities asserted and relief sought. The Court works through the various arguments.

1. **The Eleventh Amendment Bars Plaintiff's § 1983 Official-Capacity Claims for Monetary Damages and Retrospective Equitable Relief (KDOC Defendants).**

KDOC Defendants initially argue that the Eleventh Amendment bars Plaintiff's § 1983 official-capacity claims for monetary damages and retrospective equitable relief. The Court agrees. The Eleventh Amendment says that "[t]he Judicial power of the United States shall not be construed to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI.[3] The Eleventh Amendment isn't just limited to cases where the state itself is named as a defendant; it also "extends to suits against a state official in his or her official capacity because such suits are no different from a suit against the [s]tate itself." *Frank v. Lee*, 84 F.4th 1119, 1130 (10th Cir. 2023) (internal quotation, citation, and alteration omitted).

Here, Plaintiff sues KDOC Defendants under § 1983 in their official capacities and seeks monetary damages and retrospective equitable relief as redress for the implementation of a state policy or custom. The State of Kansas is the real party in interest and, as such, the Eleventh Amendment bars these claims. The Court thus lacks subject matter jurisdiction over these claims and dismisses them without prejudice.

2. **Retrospective Equitable Relief is Not Available for Plaintiff's § 1983 Individual-Capacity Claims (KDOC Defendants).**

KDOC Defendants next argue that retrospective equitable relief is not available for Plaintiff's § 1983 individual-capacity claims asserted against them. The Court again agrees. *Brown*

---

[3] The Eleventh Amendment's literal text only restricts a federal court's exercise of Article III diversity jurisdiction, but federal courts have long "understood [it] to stand not so much for what it says, but for the presupposition which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). There are two parts to this presupposition: (1) "each State is a sovereign entity in our federal system"; and (2) "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Id.* (internal quotations, alterations, and citation omitted).

*v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (explaining that "§ 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief").

### 3. Plaintiff Lacks Standing for Plaintiff's § 1983 Claims Seeking Prospective Equitable Relief (KDOC Defendants).

KDOC Defendants argue that Plaintiff lacks standing to assert § 1983 claims seeking prospective equitable relief. This argument applies to official-capacity and individual-capacity claims. KDOC Defendants note that there is an important limitation to Eleventh Amendment immunity. The Supreme Court in its opinion in *Ex Parte Young* recognized an exception for claims that seek prospective equitable relief for ongoing or threatened violations of federal law. *Frank*, 84 F.4th at 1132. KDOC Defendants thus concede that Eleventh Amendment immunity does not bar Plaintiff's § 1983 claims for prospective equitable relief, but they contend the Court still lacks subject-matter jurisdiction over them because Plaintiff lacks Article III standing to assert such claims.[4] KDOC Defendants specifically argue that Plaintiff lacks standing because he hasn't alleged ongoing or immediate threats of future violations of his Eighth Amendment rights. The Court also agrees with KDOC Defendants on this score.

The source of the federal courts' adjudicatory authority ultimately derives from Article III of the Constitution. U.S. Const. Art. III, § 1. And a federal court's legitimate exercise of this authority requires (among other things) a live case or controversy with a party who has standing to litigate it. *Spokeo v. Robins*, 578 U.S. 330, 337 (2016). Standing itself is "rooted in the traditional understanding of a case or controversy." *Id.* at 338. And because standing concerns a federal court's

---

[4] *Ex Parte Young* "permits constitutional challenges to the enforcement of state law through suits for prospective injunctive and declaratory relief against state officers in their official capacities . . . only if the sued official has a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *K.A. v. Barnes*, 134 F.4th 1067, 1077 (10th Cir. 2025).

adjudicatory authority, it therefore also concerns a federal court's jurisdiction. *See id.* at 337 ("[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (internal quotation and citation omitted)). Standing's "irreducible constitutional minimum" requires that a plaintiff have "suffered an injury-in-fact . . . fairly traceable to" the defendant's "challenged conduct" that is "likely to be redressed by a favorable judicial decision." *Id.* at 338 (internal quotation and citation omitted).

At-issue here is whether Plaintiff's claims for prospective equitable relief satisfy the injury-in-fact requirement. An injury-in-fact is one that is "concrete" and "particularized," not speculative. *See Clapper v. Amnesty Int'l U.S.A.*, 568 U.S. 398, 409 (2013). When the relief sought is prospective, a "plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future" to satisfy the injury-in-fact requirement. *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). The existence of "[p]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* But they are not dispositive; the "threatened injury must be <u>certainly impending</u> and not merely speculative." *Id.* at 1283-84 (internal quotation and citation omitted and emphasis added).

Plaintiff has not established that a real and immediate threat of injury from constitutionally deficient healthcare is "certainly impending" for him. For an injury like the one Plaintiff allegedly sustained (i.e., healthcare so deficient that it violated his Eighth Amendment right against cruel and unusual punishment), too many completely speculative circumstances would have to align. After all, there is no evidence suggesting that Plaintiff would find (or regularly does find) himself in need of medical care for issues so serious that the Eighth Amendment is potentially triggered. Nor is there any evidence to suggest that Plaintiff's past medical emergency creates an immediate,

non-speculative, imminent or certainly impending threat that care for an unknown and unexpected future medical emergency would be so deficient as to violate the Eighth Amendment. Plaintiff lacks standing to assert § 1983 claims for prospective equitable relief because he lacks a non-speculative continuing or immediately threatened injury-in-fact. The Court therefore lacks jurisdiction over Plaintiff's § 1983 official-capacity and individual-capacity claims seeking prospective equitable relief. The Court therefore dismisses these claims without prejudice.

### 4. Summary Judgment is Warranted on Plaintiff's § 1983 Individual-Capacity Claims for Monetary Damages (KDOC Defendants).

Plaintiff's sole remaining category of § 1983 claims against KDOC Defendants are individual-capacity claims for monetary damages. KDOC Defendants argue that they are entitled to summary judgment on these claims because Plaintiff did not administratively exhaust the claims as required by the PLRA before filing suit. KDOC Defendants explain that the PLRA's exhaustion rule is mandatory, and Plaintiff's failure to exhaust his administrative remedies entitles them to summary judgment. The Court again agrees with KDOC Defendants.[5]

Prison inmates incarcerated in state facilities must properly exhaust the state-defined administrative remedies available to them before pursuing § 1983 litigation in federal court. The PLRA imposes this requirement at 42 U.S.C. § 1997e(a). And while the exhaustion requirement isn't jurisdictional and a plaintiff is not under any obligation to affirmatively plead exhaustion in

---

[5] Summary judgment provides the proper framework for assessing the exhaustion defense. To be sure, much of what is necessary to resolve this summary-judgment motion is found in Plaintiff's amended complaint. But evidence from the *Martinez* Report is also necessary as is evidence extrinsic to the operative complaint. Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

his complaint, it is a mandatory claims processing rule that a defendant can invoke as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007).

KDOC Defendants raise Plaintiff's failure-to-exhaust as an affirmative defense. They note that Plaintiff filed two different grievances under K.A.R. 55-15-101, *et seq.*, (Article 15) and a personal injury complaint under K.A.R. 55-16-101, *et seq.*, (Article 16). The two grievances and the complaint relate to his July 2023 appendicitis.

Plaintiff's <u>first grievance</u> was timely under K.A.R. 44-15-101b, but it was not exhausted. Plaintiff filed the grievance on July 14, 2023, but he improperly denominated it an "emergency" grievance under K.A.R. 44-15-106. This regulation defines "emergency grievances" as "those grievances for which disposition according to the regular time limits would subject the inmate to a substantial risk of personal injury, or cause other serious and irreparable harm to the inmate." K.A.R. 44-15-106. If a grievance is wrongly filed as an "emergency," then that grievance "may then be processed from that point on as a regular grievance" and "[i]f necessary for a proper response the grievance may be sent for processing at a lower level." *Id.* This is what happened, here. Warden Williams received the "emergency" grievance but didn't think it was an emergency. Warden Williams sits at "Level 2" of the grievance process. K.A.R. 44-15-101(d)(2). He referred Plaintiff's first grievance to an "appropriate unit team member," which is "Level 1" of the formal grievance process. *See* K.A.R. 44-15-101(d)(1).

Buchanan received the grievance, reviewed it, and responded to it in writing. Buchanan concluded no action needed to be taken on it because Plaintiff had not first sought to resolve the matter informally. K.A.R. 44-15-101(b) requires that informal attempts be made to resolve the subject of a grievance before an inmate initiates the formal grievance process under K.A.R. 44-15-101(d). Plaintiff apparently elected not to appeal this determination as he did not appeal to

Warden Williams or the Secretary of Corrections. But Plaintiff was required to appeal under K.A.R. 44-15-101(d)(2)-(3) to exhaust the grievance. Plaintiff's initial grievance was therefore left unexhausted, and it does not satisfy the PLRA exhaustion requirements.

Plaintiff's second grievance was exhausted in the sense that it was pursued all the way to the Secretary of Corrections. But it was procedurally improper from the outset and therefore does not satisfy the PLRA's exhaustion requirement. Plaintiff waited over half a year after abandoning his first grievance to file the second one. Plaintiff pursued the second grievance through the standard grievance procedure. He stated that he had been "having problems getting informal resolution [and] responses to grievances." After EDCF officials concluded that Plaintiff's second grievance was untimely, Plaintiff appealed to the Secretary of Corrections and was given the same answer. This second grievance fails to satisfy what § 1997e(a) requires because an untimely-but-exhausted grievance is not a properly exhausted grievance. *See Jones*, 549 U.S. at 217-18 (discussing *Woodford v. Ngo*, 548 U.S. 81 (2006)).

Plaintiff seemingly recognizes his failure to properly exhaust his Article 15 grievances because he argues that he shouldn't have to be held strictly to the K.A.R.'s procedural requirements. Plaintiff argues that the grievance process outlined in the K.A.R. was "unavailable" to him. He explains that he failed to receive responses to his first grievance, and he had difficulty attempting informal resolution before filing his second grievance because he transferred on August 20, 2023, from EDCF to HCF (which disrupted his efforts). Plaintiff is, of course, correct to point out that administrative grievance processes must be "available," and inmates can't be prevented from pursuing them. *Ross v. Blake*, 578 U.S. 632, 642-44 (2016). But none of Plaintiff's explanations for non-compliance suggest an unavailable grievance process.

Even crediting the truth of Plaintiff's assertion that he did not receive Buchanan's response and then had difficulty pursuing the informal grievance process,[6] Plaintiff was still obligated to pursue his grievances in a timely fashion through the processes outlined in the K.A.R. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1031-32 (10th Cir. 2002) (noting that administrative remedies are available notwithstanding prison officials' failure to respond to a grievance if the regulations permit an inmate to continue to escalate the grievance after a certain period of time). K.A.R. 44-15-102 describes the various procedures applicable to the grievance process outlined in K.A.R. 44-15-101. Those procedures are clear that at every level of the process a failure to receive a response within a certain time permits an inmate to pursue the grievance at the next level in the grievance process. Officials at the first two levels have 10 days to respond. K.A.R. 44-15-102(a)-(b). If those 10 days elapse without a response, the inmate can then move the grievance to the next level. The deadline for the Secretary of Corrections to respond to grievances is 20 days. K.A.R. 44-15-102(c)(3). Plaintiff was obligated to employ these procedures. He didn't. The lack of a response at any level of the grievance process or his difficulty in pursuing informal resolution does not provide Plaintiff with an excuse.

Plaintiff's next explanation is that his August 2023 transfer somehow disrupted the grievance process. The problem with this argument is that the time for him to appeal his grievance back to Warden Williams elapsed more than two weeks before the transfer. The road for that grievance was at an end. Nor is there anything to the idea that Plaintiff would have been able to reset and restart the grievance process but for the disruption created by his transfer. It was already too late for him to start the grievance process over again. The upshot is that however disruptive

---

[6] The Court again notes that Plaintiff did not comply with Rule 56.

Plaintiff's transfer might have been, he had already failed to comply with the procedures outlined in the K.A.R. by that point.

The Court concludes that no reasonable jury could find that Plaintiff's Article 15 grievances were properly exhausted. His Article 15 grievances thus can't support his present § 1983 claims against KDOC Defendants.

The result is the same for the other administrative complaints Plaintiff lodged: these are incapable of satisfying the PLRA's exhaustion requirements for his § 1983 claims. Plaintiff filed a personal injury claim under Article 16 and a complaint to the Joint Committee on Special Claims Against the State. But whether Plaintiff might have conformed those submissions to the procedural requirements applicable to them is unimportant for PLRA exhaustion purposes. Only Article 15 grievances satisfy those exhaustion requirements. *See Brown v. Schnurr*, 2023 WL 5163987, at *3-5 (10th Cir. 2023). And these weren't Article 15 grievances.

B.    **Centurion Defendants (Doc. 45)**

Centurion Defendants also seek dispositive relief. Their motion is more targeted. They focus only on dismissal of Plaintiff's failure to exhaust his § 1983 individual-capacity claims for monetary damages. Centurion Defendants are not identically situated to state officials (like KDOC Defendants). After all, unlike state officials, Centurion Defendants have no official capacities, so they can't be sued in them.[7] So, while there's no Eleventh Amendment barrier to certain categories of claims against these defendants, neither do the claims exist.

---

[7]    The Court notes that its Eleventh Amendment analysis above is inapplicable to Centurion Defendants. Private individuals who are not state officials can be subject to § 1983 for conduct under "the color of state law" that abridges a plaintiff's constitutional rights. *E.g.*, *Parker v. Gosmanova*, 335 F. App'x 791, 794 (10th Cir. 2009). But even though as non-state officials they are subject to liability from the same federal statutory source as state officials, they are not identically situated. The Eleventh Amendment is inapplicable to claims against them because they have no official capacities. *E.g.*, *Tenison v. Byrd*, 826 F. App'x 682, 687 (10th Cir. 2020). Nor is it clear that a qualified immunity defense would be available. *See Tanner v. McMurray*, 989 F.3d 860, 874 (10th Cir. 2021) (concluding based on the multi-factor balancing analysis in *Richardson v. McKnight*, 521 U.S. 399 (1997), that a prison's private medical contractors could not assert qualified immunity defenses).

Centurion Defendants' monolithic focus on exhaustion is certainly understandable because it applies to any § 1983 claim Plaintiff might assert against them. But it's also risky and leaves something to be desired. PLRA exhaustion is an affirmative defense. And, as an affirmative defense, it is only properly granted on a motion to dismiss if the elements of the defense are present on the face of Plaintiff's pleading. There isn't an obligation for Plaintiff to affirmatively plead exhaustion. And, Plaintiff needs to have, in essence, pleaded himself out of court for the defense to succeed on a Rule 12(b)(6) motion. Any need to resort to evidence extrinsic to the complaint means that summary judgment is the appropriate vehicle. Evidence of that sort is required here. A record limited to Rule 12(b)(6) review does not show entitlement to this relief. And the Court therefore denies Centurion Defendants' motion to dismiss.

But this doesn't put an end to the Court's analysis. Even though not identically situated to the KDOC Defendants, Centurion Defendants still benefit from the standing and summary judgment arguments KDOC Defendants make. The Court's standing analysis with respect to Plaintiff's claims for prospective equitable relief against KDOC Defendants applies with equal force to Centurion Defendants. The Court therefore lacks jurisdiction over any claims against Centurion Defendants for prospective equitable relief. With respect to exhaustion, the Court has found based on KDOC Defendants' briefing that no reasonable jury could find that Plaintiff satisfied the PLRA's mandatory exhaustion requirement. Plaintiff has been heard on this issue. And the Court's conclusion that Plaintiff's failure to exhaust entitles KDOC Defendants to summary judgment is now law of the case, and the conclusion applies with equal force the Centurion Defendants and the remaining federal claims against them. *See Laubach v. Scibana*, 301 F. App'x 832, 834-37 (10th Cir. 2008) (affirming dismissal of claims against unserved and

unresponsive defendants who were identically situated to responsive defendants due to responsive defendants' meritorious PLRA failure-to-exhaust defense).

The Court therefore denies Centurion Defendants' Rule 12(b)(6) motion to dismiss. But it nevertheless dismisses any claims for prospective equitable relief against these defendants without prejudice for lack of subject matter jurisdiction. The Court also grants summary judgment in Centurion Defendants' favor based on the failure-to-exhaust arguments KDOC Defendants raised and were successful on. The Court grants summary judgment for Centurion Defendants on all Plaintiff's remaining § 1983 claims against them.

### C. Supplemental Jurisdiction.

Because all federal claims are now gone, the Court turns to Plaintiff's state law claims. Supplemental jurisdiction is the hook for these claims. 28 U.S.C. § 1367. Where, as here, no federal claims over which the Court has original jurisdiction remain in the case, the Court has discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). And, in this sort of case, the Supreme Court has instructed courts generally to decline to exercise it. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *accord, King v. Fleming*, 899 F.3d 1140, 1154 (10th Cir. 2018).

There are exceptions to this general rule, and the Court has an obligation to "consider and in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" when determining whether the exercise of supplemental jurisdiction is appropriate. 28 U.S.C. § 1367(c)(3). Although summary judgment provides the mechanism for dismissal of some of Plaintiffs' claims, the case is nevertheless in its early stages. No scheduling order has been entered. No depositions have been taken. In addition, all the parties are Kansans. The Court would have to take positions on substantive state law. And the state claims in play do

not implicate federal interests or bear on federal policy issues. The Court therefore declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice.

### III.  CONCLUSION

THE COURT THEREFORE ORDERS that KDOC Defendants' motion (Doc. 60) is GRANTED. All Plaintiff's § 1983 claims against Defendants Katherine Firman, Anthony Luna, Jennell Buchanan, and Tommy Williams are DISMISSED WITHOUT PREJUDICE for want of jurisdiction except his § 1983 individual-capacity claims for monetary damages. The Court grants SUMMARY JUDGMENT in favor of Defendants Katherine Firman, Anthony Luna, Jennell Buchanan, and Tommy Williams on this claim.

THE COURT FURTHER ORDERS that Centurion Defendants' motion (Doc. 45) is DENIED. Even so, all Plaintiff's § 1983 claims for prospective equitable relief against Defendants Vanessa Payne-Delano, Gordon Harrod, and Breanna Johnston are DISMISSED WITHOUT PREJUDICE for want of jurisdiction. The Court grants SUMMARY JUDGMENT in favor of Defendants Vanessa Payne-Delano, Gordon Harrod, and Breanna Johnston on Plaintiff's remaining § 1983 claims.

THE COURT FURTHER ORDERS that Plaintiff's state-law claims are DISMISSED WITHOUT PREJUDICE because the Court declines to exercise supplemental jurisdiction.

This case is closed. Federal Rule of Appellate Procedure sets out the deadline for filing a notice of appeal.

IT IS SO ORDERED.

Dated: December 3, 2025                    /s/ *Holly L. Teeter*
                                                            HOLLY L. TEETER
                                                            UNITED STATES DISTRICT JUDGE